UNITED STATES of America, Appellee,

v.

Jerry Alvin WILLIAMS, Appellant.

No. 80–1357.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1980.

Decided Oct. 31, 1980.

Rehearing and Rehearing En Banc
Denied Dec. 5, 1980.

Stroup, Goldstein, Jenkins & Pritzker, Michael L. Pritzker, R. Brent Daniel, Chicago, Ill., for appellant.

Thomas K. Berg, U. S. Atty., Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and PORTER,* District Judge.

LAY, Chief Judge.

Jerry A. Williams was convicted of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and sentenced to five years in prison and a three year special parole term. He appeals, alleging first, that his Fourth Amendment rights were violated when officers entered his house without a warrant and arrested him and several other individuals; and second, that a subsequently issued search warrant was vague and lacked probable cause. We disagree and affirm the conviction.

In June, 1979, John Gill contacted Holly Thorvig, who faced likely imprisonment on federal drug charges, and requested that Thorvig "sell" him her cocaine source. Thorvig, acting in cooperation with the Drug Enforcement Agency (DEA), introduced Gill to DEA Agents Curtis Workman and Ronald Tomcik, and identified them as her source. Gill and the agents negotiated a sale of cocaine to occur on July 8, 1979.

Tomcik planned to sell Gill a white, powdery cocaine–like substance prepared by a DEA laboratory. On Sunday, July 8, Gill and Thorvig met Tomcik at the Minneapolis–St. Paul International Airport, where they discussed the sale and agreed that Thorvig would go with Gill to see the purchase money while Tomcik waited at the airport. Gill told Tomcik that two other individuals were involved in the transaction. DEA agents had the airport area under surveillance and were prepared to arrest Gill when the money was exchanged for the fake cocaine.

Gill and Thorvig left the airport and met an associate of Gill's, John Fogarty. The three of them drove to a four–plex in Eagan, Minnesota in which the defendant, Jerry Williams, resided. Fogarty and Thorvig went in and a man called "Willie," subse-

quently identified as Williams, participated in displaying the purchase money to Thorvig. An agent saw Fogarty and Thorvig leave the four–plex, and noticed they were apparently speaking to a person or persons inside as they left. They returned to the airport, where Gill and Thorvig met with Tomcik. Upon Gill's insistence that the cocaine be tested prior to the completion of the sale, Tomcik put a briefcase full of the fake cocaine into the trunk of Thorvig's car. Thorvig and Fogarty then drove away, leaving Gill with Tomcik at the airport.

DEA agents conducting the airport surveillance had expected to make the arrest at the airport, and were unprepared for this turn of events. They ran to their cars and attempted to catch Thorvig's car, but were unable to do so. Acting on information obtained in surveillance of Gill's and Thorvig's travels earlier in the day, they drove to the four–plex in Eagan, where they found Thorvig's car parked. They were joined there by uniformed police from the Eagan police force.

Agents went to Williams' front door, a sliding glass door and a basement level door. Agent Workman, at the glass door, identified himself and requested entry; a woman inside opened the screen, and Workman and other officers entered. Some officers entered through the other doors and all the occupants of Williams' residence were arrested. Williams was found in the basement with Fogarty.

Agent Workman then left to obtain a search warrant. He submitted an affidavit relating the events discussed above, and the magistrate issued a warrant authorizing a search of Williams' residence for money, bogus cocaine, weighing and packaging materials and various documents and records. During the search the agents discovered the genuine cocaine upon which Williams' conviction is based.

*Warrantless Entry and Arrest*

Williams argues that the warrantless entry to arrest the occupants of his house

---

* Donald J. Porter, United States District Judge for the District of South Dakota, sitting by designation.

744

violated the Fourth Amendment. In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) the Supreme Court concluded that "the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 1374–75. See also *United States v. Houle*, 603 F.2d 1297 (8th Cir. 1979). The searches in *Payton* occurred in the absence of any exigent circumstances, and the court reserved judgment as to what circumstances, if any, might otherwise justify a warrantless entry. *Payton v. New York*, 100 S.Ct. at 1378. The defendant recognizes that a warrantless entry to arrest may be justified where exigent circumstances exist. *See United States v. Kulcsar*, 586 F.2d 1283, 1286 (8th Cir. 1978); *United States v. Easter*, 552 F.2d 230, 233–34 (8th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977); *Salvador v. United States*, 505 F.2d 1348, 1351–52 (8th Cir. 1974). *Cf. United States v. Williams*, 604 F.2d 1102, 1122–23 (8th Cir. 1979) (sound of "running feet" insufficient exigency); *United States v. Houle*, 603 F.2d 1297, 1300 (8th Cir. 1979) (defendant alone and asleep over four hours after disturbance).

■ The fundamental issue posed is whether factual circumstances demonstrate a sufficient basis for the officers to make a warrantless entry. The magistrate found the circumstances justified a warrantless entry by the officers by reason of their fear for the safety of their informant, Holly Thorvig. The test of the fake cocaine was imminent. The magistrate found that it was reasonable for the officers to assume once the fake cocaine was discovered it would have exposed Thorvig as a police informant and placed her safety in jeopardy. We agree. DEA Agent Workman testified he was aware Gill had been violent to Thorvig on a past occasion; viewed objectively, it was not unreasonable for the officers to fear harm to Thorvig from Gill's associates under these circumstances.[1] When there is a reasonable fear of harm, a warrantless entry may be justified. *See United States v. Weaklem*, 517 F.2d 70, 72 (9th Cir. 1975) (fear for safety of undercover agents, who had been threatened previously); *United States v. Bradley*, 455 F.2d 1181, 1187 (1st Cir. 1972) (delay to obtain warrant could increase danger to officers making undercover drug purchase), *aff'd*, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973). *See generally* 2 W. LaFave, Search & Seizure § 6.1 at 394 (1978). Accordingly, we find that exigent circumstances justified the warrantless entry into Williams' residence.[2]

■ Williams also argues that his Fourth Amendment rights were violated since there was no probable cause for his warrantless arrest. We need not decide whether there was probable cause for Williams' arrest since no evidence was obtained incident to that arrest. Williams' conviction rests on cocaine seized during the later search pursuant to a warrant. The warrant was based on an affidavit that established probable cause to search Williams' home based on information gathered during the surveillance and undercover operations. The affidavit contained little or no information gathered in the alleged illegal arrest.[3] As such, this evidence was not the fruit of any illegal arrest by the agents and was not subject to the exclusionary rule set forth in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Wong Sun* recognized that the issue is whether "the

1. An objective standard is used to evaluate the reasonableness of the officer's belief in the existence of exigent circumstances. *See Root v. Gauper*, 438 F.2d 361, 364 (8th Cir. 1971).

2. Since the concern for Thorvig's safety justified the warrantless entry, we need not reach the other justifications offered by the United States.

3. The affidavit refers to the fact that an entry and arrest had occurred: "The money and bogus cocaine were not in plain sight. The occupants refused to come to the door despite repeated identification and request by the agents who were joined with uniformed local officers." The only other information in the affidavit which was not already known prior to the entry and arrest is Williams' name and residence in the four–plex.

evidence ... has been come at by exploitation of ... illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417 (quoting Maguire, Evidence of Guilt 221 (1959)). Numerous courts have concluded that when a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, "[i]f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted." *James v. United States,* 418 F.2d 1150, 1152 (D.C.Cir.1969) (Leventhal, J.) (footnote omitted). *See also United States v. Giordano,* 416 U.S. 505, 554–56, 94 S.Ct. 1820, 1845–46, 40 L.Ed.2d 341 (1974) (Powell, J., concurring and dissenting); *United States v. House,* 604 F.2d 1135, 1143 (8th Cir. 1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *United States v. Koonce,* 485 F.2d 374, 379 (8th Cir. 1973); *United States v. Korman,* 614 F.2d 541, 547 (6th Cir.), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980); *United States v. Saitta,* 612 F.2d 205, (5th Cir.), *cert. denied,* 446 U.S. 910, 100 S.Ct. 1838, 64 L.Ed.2d 263 (1980); *United States v. Marchand,* 564 F.2d 983, 992–95 (2d Cir. 1977) (Friendly, J.), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Grunsfeld,* 558 F.2d 1231, 1240–41 (6th Cir.), (distinguishing *Langley* and *Nelson, infra*), *cert. denied,* 434 U.S. 872, 1016, 98 S.Ct. 219, 733, 54 L.Ed.2d 152, 761 (1977). *But see United States v. Griffin,* 502 F.2d 959 (6th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974) (illegal entry followed by search with a warrant; suppression of evidence gathered in second search essential to deter illegal entry); *United States v. Langley,* 466 F.2d 27 (6th Cir. 1972); *United States v. Nelson,* 459 F.2d 884, 888–89 (6th Cir. 1972); *People v. Cook,* 22 Cal.3d 67, 148 Cal.Rptr. 605, 583 P.2d 130, 145–49 (1978) (In Bank) (emphasis on suppression as a deterrent; discourage "confirmatory searches" in which an illegal search is made but not used in the affidavit). The situation here is analogous since the affidavit establishes probable cause to search even if the facts, if any, obtained in the allegedly illegal arrest are excluded.[4] *Cf. United States v. Williams,* 604 F.2d 1102, 1123 (8th Cir. 1979) (entry improper and affidavit tainted by information obtained in the initial entry and lacking independent source).

*Search Warrant*

■ Williams argues that at most there was probable cause to authorize a search for the money and fake cocaine, but that there was no showing of probable cause to justify a search for other materials related to the cocaine transaction. We disagree. The affidavit identified Williams' residence as the site of the transaction, the purchase money, and the false cocaine, and tied Williams himself into the conspiracy. Under these circumstances the magistrate correctly found probable cause to search for items relating to cocaine transactions, including weighing and packaging materials and records.

Williams also argues that the warrant is an unconstitutional "general warrant" because it does not describe the objects of the search, particularly various documents and records, with sufficient precision.[5] This ar-

---

**4.** We note there is no indication here that the officers searched the house and/or questioned the persons arrested and obtained information confirming their earlier suspicions, and then submitted affidavits that did not mention the newly discovered confirmatory information. In fact, the magistrate found the purpose of the entry was to protect the safety of Thorvig in case the test of the fake cocaine revealed her role as an informant.

**5.** The text of the warrant described the property as:

money intended to be used to facilitate a drug purchase; and intended to be furnished in exchange for cocaine, a controlled drug, together with weighing and packaging materials, and items of personal identification, including rent and utility receipts and telephone tolls tending to establish constructive possession of such monies, drugs, telephone tolls and bills, hotel bills, records of banking, personal address books, records and notations of narcotics purchases and sales, records of drug customers and sources and of

gument is without merit. On its face, the warrant describes the particular types of documents and records sought, and specifies that they must relate to the crimes of unlawful cocaine possession and distribution, and conspiracy. This is sufficient to meet the requirements of the Fourth Amendment. *See United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980) (seizure of "certain books and records ... relating to the extortionate credit transaction business"); *United States v. Johnson*, 541 F.2d 1311 (8th Cir. 1976).

The conviction is affirmed.

indebtedness for narcotics which are contraband and evidence of the unlawful possession and distribution of the same and of conspiracy to do so and possess and distribute. Also a package containing two packages of bogus cocaine.