903 F.2d 566
 UNITED STATES of America, Appellee,
v.
John McCONNELL, Appellant.
UNITED STATES of America, Appellee,
v.
Damon DOBBINS, Appellant.
UNITED STATES of America, Appellee,
v.
Deborah BYRNE, Appellant.
UNITED STATES of America, Appellee,
v.
Donald McCLOSKEY, Appellant.
 Nos. 89-1734 through 89-1736 and 89-1745.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 16, 1990.
Decided May 14, 1990.
Rehearing and Rehearing En Banc Denied July 31, 1990.
 
 1
 Donald L. Wolff, Clayton, Mo., for appellant McCloskey.
 
 
 2
 Leonard J. Frankel, St. Louis, Mo., for appellant McConnell.
 
 
 3
 Cornelius T. Lane, St. Louis, Mo., for appellant Dobbins.
 
 
 4
 Lori R. Koch, St. Louis, Mo., for appellant Byrne.
 
 
 5
 Debra E. Herzog, St. Louis, Mo., for appellee.
 
 
 6
 Before McMILLIAN, Circuit Judge, MAGILL, Circuit Judge, and HANSON*, Senior District Judge.
 
 
 7
 HANSON, Senior District Judge.
 
 
 8
 Appellants McCloskey, McConnell, Dobbins and Byrne appeal their convictions of conspiracy to possess and distribute cocaine and marijuana. Appellant McCloskey also appeals his conviction of engaging in a continuing criminal enterprise. We affirm the convictions but remand three of the cases to the district court for resentencing.
 
 
 9
 The facts of this case, as found by the jury, established that McCloskey ran a cocaine and marijuana distribution ring in which couriers transferred large quantities of these illegal drugs from McConnell in Florida to McCloskey in Missouri. The drugs were then sold to a limited number of drug dealers. The jury found that Dobbins acted as a courier for the two men and that Byrne acted as a contact person in Florida for the various couriers. Appellants allege a wide variety of errors which we now address.
 
 Florida Hotel Search
 
 10
 McConnell argues that evidence gathered in a Florida hotel search on September 29, 1986 should have been suppressed as the fruit of an illegal search. McConnell and the other appellants further assert that such evidence, if not the product of an illegal search, was prior bad acts evidence admissible only through the dictates of Fed.R.Evid. 404(b). We disagree.
 
 
 11
 1. The Facts.
 
 
 12
 The search at issue occurred at the Marriott Hotel in Fort Lauderdale, Florida, on September 29, 1986 when a police officer entered McConnell's hotel room without a warrant. McConnell argues that the entry was unlawful due to a lack of both probable cause and exigent circumstances supporting the entry. The lengthy chain of events leading to the search has already been thoroughly summarized by the district court. See United States v. McCloskey, et al., No. 88-140CR(3), Report and Recommendation of Magistrate David Noce, slip op. at 5-11 (E.D.Mo. Oct. 26, 1988); adopted by District Court, No. 88-140CR(3) slip op. at 2 (E.D.Mo. Jan. 13, 1989). We adopt these facts by this reference finding them to be supported by the record. Briefly, the facts are as follows.
 
 
 13
 The chain of events leading to the warrantless entry of the hotel room began when a hotel manager called the police to report that a loaded revolver wrapped in a towel had been discovered in an unoccupied room. The manager requested police assistance in investigating the matter indicating that the prior occupant of the room had not left the hotel, but had checked into another room.
 
 
 14
 Officer Sequin responded to the call, inspected the gun, and went to a room registered to a "Don Millman" at the direction of the hotel manager. Appellant McConnell answered Sequin's knock by opening the door slightly. Sequin identified himself, indicated that he wanted to talk to appellant about a weapon found in his prior room, and asked appellant if he could enter. McConnell instead stepped out into the hall stating that his girlfriend was asleep in the room. McConnell then stated that he may have left a loaded gun in his previous room. At this point officer Sequin asked appellant for identification and was given a Michigan driver's license bearing the name "John Millman". Sequin recognized the identification as false and indicated this to appellant. Appellant then provided Sequin with a Florida driver's license bearing the name John McConnell and stated that this was his real name. Sequin asked why a local resident was staying in the hotel. McConnell responded that he was there with his girlfriend and asked for his gun back. Sequin told him that he could recover the gun from the police station if he could prove that he owned it. Sequin then returned to the hotel office.
 
 
 15
 Fifteen minutes later Sequin and two hotel employees returned to McConnell's room. The hotel intended to evict McConnell for registering under a false name. Sequin intended to arrest appellant for using false identification once he was safely outside of the hotel. Sequin knocked on the door, reidentified himself, and told McConnell that the hotel was evicting him for registering under a false name. McConnell, who had once again opened the door only slightly, said that he needed a few minutes to get his belongings together and asked Sequin to wait in the hallway until his girlfriend got dressed. Sequin agreed but put his foot in the door to keep it from closing completely. After several minutes passed during which Sequin heard no voices he asked if the girlfriend was dressed and whether he could enter the room. McConnell responded that he had lied and that his girlfriend was not really in his room.
 
 
 16
 After several additional minutes passed officer Sequin determined that he was in a situation that presented danger to himself and to the inhabitants of the hotel and that he should enter the room. He then announced his intention to enter the room with his gun drawn. Once he entered the room he discovered illegal drugs in plain view and McConnell was placed under arrest and handcuffed. After McConnell was secured Sequin telephoned for police assistance and the hotel personnel began packing appellant's belongings. Two more officers arrived on the scene and one of them opened an unlocked briefcase and discovered additional guns. A pistol was also retrieved from the bathroom.
 
 
 17
 2. Probable Cause and Exigent Circumstances to Enter Hotel Room.
 
 
 18
 We agree with the district court that the officer's entry into the hotel room was not illegal. Officer Sequin went to McConnell's hotel room intending to arrest McConnell for use of a false driver's license once he had assisted hotel management in evicting McConnell from the hotel. United States v. McCloskey, Report and Recommendation at 16. Use of false identification is a crime under Florida law. See Fla.Stat. Sec. 322.212(1) (1984); State v. Johnson, 414 So.2d 18, 19 (Fla.Dist.Ct.App.1982). Thus, the entry into the room was supported by probable cause.
 
 
 19
 The entry was also supported by exigent circumstances. Officer Sequin entered the room based upon fear of harm to himself, hotel personnel, and hotel guests. This fear was based upon a number of factors including the officer's knowledge that: appellant had brought at least one loaded gun with him into a family hotel; appellant was apparently indifferent to the location of this loaded revolver; appellant had engaged in a series of lies aimed at shielding his identity from the hotel staff and officer Sequin; and appellant had lied to officer Sequin about the presence of other persons in the room in an attempt to keep Sequin or hotel staff from entering the room. These factors, along with the other facts known by the officer, were sufficient to create a number of reasonable concerns, including: whether appellant's failure to realize his misplacement of a single loaded revolver was an indication that he had additional guns with him; what appellant's purpose was in the hotel as he was a local resident and the reason he had given the officer for being in the hotel was apparently false; whether there were any additional persons in the hotel room who might constitute an additional risk to hotel guests, or who may be at risk themselves; whether appellant's lies about the presence of other persons in the hotel room was an attempt to give him time to prepare to take some action against the officer, or hotel guests; whether the officer was at physical risk of being shot if he remained outside the room; and whether hotel guests or personnel would be put at risk if he left the scene to obtain a search warrant.
 
 
 20
 In short, appellant's series of lies to the officer, when combined with the officer's knowledge that appellant had brought at least one loaded firearm with him into a family hotel, placed officer Sequin in an extremely anxious and disturbing situation and created "a reasonable fear of harm" to his safety and the public's safety. United States v. Williams, 633 F.2d 742, 744 (8th Cir.1980). Accordingly, officer Sequin was justified in entering the room because of his reasonable belief that it was necessary to protect himself and the public from a possible violent action from appellant. Id. See also, Maryland v. Buie, --- U.S. ----, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (police entitled to take such actions necessary to protect themselves from harm).[1] Because the entry was supported by both probable cause to arrest and exigent circumstances the entry was legal. See United States v. Houle, 603 F.2d 1297, 1300 (8th Cir.1979).
 
 
 21
 3. The Search of the Unlocked Briefcase.
 
 
 22
 We do find that the opening of the unlocked briefcase constituted an illegal search. The government's contention that the search was legal as incident to the arrest is entirely meritless because of the inability of McConnell to access the briefcase. However, the evidence does establish that the search of the briefcase would have been inevitable pursuant to the Ft. Lauderdale police policy of inventorying the contents of seized baggage belonging to arrested persons. United States v. McCloskey, Report and Recommendation at 18. Further, the record also establishes that the search warrant which the police obtained entitling them to search all of the baggage from appellant's hotel room was not tainted by any information gathered from the illegally opened briefcase. Accordingly, evidence seized from the briefcase was admissible under the inevitable discovery doctrine. Nix v. Williams, 467 U.S. 431, 442-43, 104 S.Ct. 2501, 2508-09, 81 L.Ed.2d 377 (1984).
 
 
 23
 4. The Florida State Court's Ruling on Admissibility.
 
 
 24
 Appellants also contend that the district court was required to deny the admissibility of the evidence because of the finding by a Florida state court judge that the evidence should be suppressed in any state court proceedings. We disagree. The record establishes that the hearing in federal court was a de novo hearing which was more extensive than the state court hearing and in which the court gave full consideration to the state court findings. Thus, the district court committed no error. See generally, Rinaldi v. United States, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (administration of criminal justice would suffer if Constitution interpreted as binding one sovereign to findings of other sovereign in criminal proceedings simply because one was first to prosecute); Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (successive state and federal prosecutions are not in violation of the Constitution).
 
 
 25
 5. Evidence of Conspiracy or of Prior Bad Acts.
 
 
 26
 Finally, we note that the evidence from the hotel room was properly introduced as evidence of the conspiracy against all defendants. The conspiracy charged by the government was for the period from 1983 through 1987. The evidence was seized from the hotel in 1986 and contained notes detailing narcotics transactions and money exchanges between and among the various coconspirators. See Trial Transcript, Vol. IV, pp. 64-70 (Feb. 2, 1989). Thus, no limiting instruction under Rule 404(b) was required. "Evidence that is probative of the crime charged and not relevant solely to uncharged crimes is not 'other crimes' evidence." United States v. Cerone, 830 F.2d 938, 948 (8th Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). The fact that the trial court, out of an abundance of caution, chose to give a partially limiting instruction was in no way harmful to appellants. Instead, it simply gave them more than they were entitled to. As such it is no ground for reversal.
 
 Severance
 
 27
 The parties also assert that they are entitled to reversal because of the district court's decision not to sever their cases for separate trials.
 
 
 28
 Persons charged with a conspiracy will generally be tried together, especially where proof of the charges against each of the defendants is based on the same evidence and acts. We will not disturb a district court's denial of a severance motion in the absence of a showing that the court abused its discretion, causing clear prejudice to a defendant's right to fair trial.... The denial of a severance motion results in clear prejudice when the defendant is deprived of an appreciable chance that he would not have been convicted in a separate trial, and not merely when he would have had a better chance for acquittal in a separate trial. Disparity in the evidence introduced against each of the defendants, or allegations that evidence which incriminated a co-defendant had a "spillover" prejudicial effect against the defendant, are insufficient grounds for severance unless the ... defendant has demonstrated the jury's inability to "compartmentalize" the evidence against the separate defendants.
 
 
 29
 United States v. O'Meara, 895 F.2d 1216, 1218-19 (8th Cir.1990) (citations omitted).
 
 
 30
 We find no prejudice to any of the appellants because of the court's decision not to sever. There is no indication that any of the appellants suffered from any "spillover" effect. Instead, the "roles of the individual appellants" were "sufficiently distinct that the jury, aided by the court's instructions, could compartmentalize the evidence against each defendant." United States v. Andrade, 788 F.2d 521, 530 (8th Cir.1986), cert. denied, Riley v. United States, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986). Further, none of the appellants have shown that they would have been able to introduce "substantially exculpatory" testimony from one of their codefendants in a separate trial. United States v. DeLuna, 763 F.2d 897, 920 (8th Cir.1985), cert. denied, Thomas v. United States, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). Accordingly, the district court's refusal to sever was not an abuse of its discretion.
 
 
 31
 Dobbins' Statements Prior to Grand Jury Testimony
 
 
 32
 Appellant Dobbins also asserts that statements elicited from him prior to his testimony before the grand jury were taken in violation of his Miranda rights. We disagree. At the time Dobbins gave the statements at issue "he was never in custody; his freedom of movement was never limited." United States v. McCloskey, Report and Recommendation at 12. Thus, his Miranda rights were in no way violated. Miranda v. Arizona, 384 U.S. 436, 477-78, 86 S.Ct. 1602, 1629-30, 16 L.Ed.2d 694 (1966).
 
 Byrne's Motion for Judgement of Acquittal
 
 33
 Appellant Byrne asserts error in the District Court's refusal to grant her motion for judgment of acquittal asserting that her conviction amounted to nothing more than guilt by association. "In reviewing the denial of a motion for a judgment of acquittal, we must examine the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences," and will reverse only if we conclude that a reasonable jury could not have found the defendant guilty beyond a reasonable doubt. United States v. Davis, 785 F.2d 610, 619 (8th Cir.1986). We have thoroughly reviewed the trial transcripts regarding appellant Byrne and find, giving the government the reasonable inferences which we must, that the evidence establishes that Byrne played an active, knowing role as a contact person for the conspiracy and helped to run some of its mechanics. Thus, the district court's denial of her motion was not error.
 
 McCloskey's Assertion of Spousal Immunity
 
 34
 Appellant McCloskey's assertion that the court erred in allowing the testimony of his ex-wife, Kathlene Ponze, is also without merit. The "privilege for confidential marital communications" does not extend to situations in which the statements were made in the presence of a third party or intended to be transmitted to a third person. Pereira v. United States, 347 U.S. 1, 6, 74 S.Ct. 358, 361-62, 98 L.Ed. 435 (1954). It is also established that the "privilege, generally, extends only to utterances, and not to acts." Id. In this case none of the challenged testimony consisted of statements or utterances attributed to McCloskey outside of the presence of third parties. Thus, there was no violation of Spousal Immunity.
 
 Preconspiracy Evidence Against McCloskey
 
 35
 Appellant McCloskey also asserts that the court erred in admitting preconspiracy evidence against him. We find no error in the court's action on this issue because the evidence was admitted in accordance with the dictates of United States v. Moeckly, 769 F.2d 453 (8th Cir.1985), cert. denied, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986), and United States v. Miller, 725 F.2d 462 (8th Cir.1984). The evidence admitted was not so far removed in time to make it inadmissible; the evidence was probative of whether McCloskey entertained intent, common scheme or plan; the evidence was not unduly prejudicial; the evidence was clear and convincing; and the district court properly gave a limiting instruction informing the jury of the narrow purpose for which it was admitted. Moeckly, 769 F.2d at 464, Miller, 725 at 466.
 
 Appellants' Sentences
 
 36
 Finally, we turn to the issue of appellants' sentences. The record establishes, and the government admits, that the trial court improperly sentenced appellants Byrne, Dobbins and McConnell by providing in their sentences that they would become eligible for parole under 18 U.S.C. Sec. 4205(a) upon serving one third of their respective terms. This was error because these appellants were sentenced under 21 U.S.C. Sec. 841(b)(1)(B) which specifically provides that "[n]o person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein."
 
 
 37
 We cannot discern whether the district court would have imposed sentences of different lengths had it been aware of the inapplicability of Sec. 4205. Accordingly, we remand the sentences of Byrne, Dobbins and McConnell to the district court for resentencing. In remanding these sentences we direct the court to also review appellants' other claims regarding sentencing.
 
 Conclusion
 
 38
 Finding no reason for reversal, we affirm appellants' convictions. We do, however, remand three of the cases back to the district court for resentencing in accordance with this opinion.
 
 
 39
 McMILLIAN, Circuit Judge, dissenting.
 
 
 40
 For the reasons discussed below, I disagree with the majority opinion's analysis of the issues involving the legality of the police entry and search of the Florida hotel room. Accordingly, I would reverse all the convictions and remand the cases to the district court for new trial.[1]
 
 
 41
 The fourth amendment extends to McConnell's hotel room, or, more accurately, protects McConnell in the hotel room. " '[T]he Fourth Amendment protects people, not places,' and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." Minnesota v. Olson, --- U.S. ----, ---- n. 5, 110 S.Ct. 1684, 1688 n. 5, 109 L.Ed.2d 85 (1990), citing Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). McConnell had a reasonable expectation of privacy as a hotel guest. I will assume for purposes of analysis that the police officer had probable cause to arrest McConnell for using false identification. Without an arrest or search warrant, however, the police officer could not lawfully enter the hotel room to arrest McConnell or search the hotel room, in the absence of consent or exigent circumstances. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). McConnell did not consent to the police officer's entry, and I do not agree with the majority opinion that exigent circumstances justified the police officer's warrantless entry of McConnell's hotel room.
 
 
 42
 This is not a case involving "hot pursuit" of a fleeing felon or the imminent destruction of evidence or the need to prevent escape. The crime for which the police officer had probable cause to arrest McConnell was the use of false identification, a minor offense. As noted by the majority opinion, the principal grounds for the police officer's anxiety about the risk of danger to himself and to others were that McConnell had lied to him about his name and had misplaced a loaded handgun. Op. at 570. However, the police officer had not returned the handgun to McConnell and could only speculate about whether or not McConnell had any other guns. And the police officer had already checked McConnell and his car and knew that there were no outstanding warrants and that it is not a crime to possess a handgun in Florida. The fact that McConnell was staying in a hotel even though he was a local resident or that his reasons for staying in the hotel were false may be probative of the existence of probable cause, but they are not relevant to the existence of exigent circumstances. Similarly, the fact that the hotel in question is a "family" hotel is not necessarily relevant to the existence of either probable cause or exigent circumstances. The hotel in question is a large resort hotel in a well known vacation city in Florida. Presumably, single persons can decide to stay in resort hotels. Hotels, like apartment buildings or office buildings, are crowded places. Police action in any crowded place would be potentially dangerous to others. The police officer and the hotel security staff knew where McConnell was and presumably were watching the room. The police officer could have arrested McConnell when he left the hotel room or the hotel. I do not think these facts constitute exigent circumstances. For this reason, the police officer's warrantless, nonconsensual entry of the hotel room violated McConnell's fourth amendment rights and the hotel room evidence should have been suppressed.
 
 
 43
 Because the hotel room evidence, which consisted of cocaine, handguns and notes of drug transactions, was erroneously admitted as evidence of the conspiracy against all defendants, I would reverse all the convictions and remand the cases to the district court for new trial.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 Appellant contends that his possession of a loaded revolver in a family hotel is irrelevant to the issue of whether Sequin had a reasonable fear of harm because such possession is not illegal under Florida law. The argument fails to recognize that the potential dangerousness of a loaded gun is not dependent upon its legality, but is instead measured by the surrounding circumstances. In this case, appellant acted in numerous ways that reasonably indicated to officer Sequin that he was in a dangerous situation
 
 
 [1]
 I do agree with the majority opinion's decision to vacate the sentences of appellants Byrne, Dobbins and McConnell and to remand their cases to the district court for resentencing