IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2016 Session

## STATE OF TENNESSEE v. LINDSEY A. OCHAB

**Appeal from the Circuit Court for Williamson County**
**No. I-CR068877     Joseph Woodruff, Judge**

---

**No. M2015-02290-CCA-R3-CD – Filed October 26, 2016**

---

In this appeal, the State challenges the ruling of the trial court granting the defendant's motion to suppress evidence and dismiss the two-count indictment charging the defendant with driving under the influence ("DUI") and driving with a blood alcohol content greater than .08 percent ("DUI per se"). Because the trial court failed to consider the effect of a search warrant and because, at any rate, probable cause supported the defendant's arrest, the trial court erred by granting the defendant's motion to suppress. The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tristan Poorman, Assistant District Attorney General, for the appellant, State of Tennessee.

Roger Reid Street, Jr., and Elizabeth A. Russell, Franklin, Tennessee, for the appellee, Lindsey A. Ochab.

## OPINION

On March 14, 2014, Tennessee State Trooper Randy McDonald stopped the defendant's car after he observed the defendant's vehicle cross the fog line, and, based upon his observations of the defendant and her refusal to participate in field sobriety tests, he placed the defendant under arrest for DUI. Trooper McDonald then obtained a

search warrant so that he could procure a sample of the defendant's blood for blood alcohol testing.

In June 2015, the Williamson County Grand Jury charged the defendant with alternative counts of DUI and DUI per se. On August 24, 2015, the defendant moved the trial court court to suppress her "unlawful arrest" and to "dismiss the indictment which resulted from" the unlawful arrest. In her motion, the defendant argued that Trooper McDonald lacked probable cause to arrest her. The motion did not include challenges to the search warrant that precipitated the drawing of the defendant's blood or to the results of subsequent blood alcohol testing. Indeed, the motion did not include a challenge to any specific piece of evidence.

At the October 30, 2015 hearing on the defendant's motion, Trooper McDonald testified that at approximately 11:50 p.m. on March 14, 2014, he was traveling north on Interstate 65 in Williamson County when he observed a vehicle "cross over the fog line in the far right lane." Trooper McDonald sped up to better observe the vehicle and saw it "cross completely over the fog line again." He then "fell in behind the vehicle and it came over and touched the fog line at least 2 times." At that point, Trooper McDonald initiated a traffic stop.

Trooper McDonald approached the vehicle on the driver's side, and the defendant, who was driving the vehicle, rolled down the window. She indicated that the male passenger was her fiancé. Trooper McDonald immediately smelled "an obvious smell of [an] alcohol beverage coming from the vehicle." He said that the defendant "had bloodshot, watery eyes, slurred speech, and smelled of alcohol." The defendant denied having consumed alcohol. She gave Trooper McDonald her driver's license, but neither she nor her fiancé could initially locate the vehicle registration documents. Trooper McDonald ran the defendant's driver's license and then backed up his patrol car and shut off the front blue lights in preparation for asking the defendant to perform field sobriety tests. He explained that at that point he believed the defendant to be intoxicated and that her fiancé was "extremely intoxicated."

When he approached the vehicle a second time, Trooper McDonald asked the defendant to exit the vehicle so that he could speak with her further. He recalled that when she stepped out of the vehicle, he again noticed the smell of an alcoholic beverage coming from her person. He told the defendant that he could smell alcohol, and she again denied that she had been drinking. She also denied having consumed any medication that might have affected her ability to drive. Trooper McDonald asked the defendant if he could check her eyes, and, although she initially "stood like she was going to let" him do so, she then "decided that she wanted to decline" and "started talking about safety and being on the side of the interstate." He offered to transport her to a nearby location to

perform the test and have the local police department sit with her vehicle and "keep an eye on her intoxicated passenger," who at that point had opened up the passenger's side door and "was throwing up outside the car." The defendant then flatly refused to perform field sobriety tests in that or any other location. Trooper McDonald informed the defendant that if she refused to perform the field sobriety tests, he would be unable to "determine if she's okay to drive" and that he would have to arrest her for DUI.

Trooper McDonald explained, "From my training, my experiences, bloodshot, watery eyes, her behavior, the odor, you know, I felt like I had, you know, I felt she was under the influence." He noted that the defendant was "unsteady on her feet . . . more heavy footed than . . . anything else." He described "heavy footed" as "if you're working out and you're doing squats and you done your last set of squats, when you get done well you're not swaying, you're not falling, you're not staggering, but your legs are weak and your feet are heavy footed." He said that he had "run across that on the road with impaired people."

Trooper McDonald said that he noticed the defendant's slurring her words when she first spoke with him. That was when he initially observed that her eyes were watery and appeared bloodshot. He said that he used his flashlight to see into the car but did not shine the light into the defendant's eyes. He added that the interior light was on in the car.

The video recording from Trooper McDonald's cruiser camera was exhibited to the hearing. The video establishes that just eight minutes elapsed from the time Trooper McDonald first approached the defendant to the time that the defendant was placed under arrest. During that time, the defendant can be observed walking only briefly from her vehicle to Trooper McDonald's cruiser. Her gait appears to be normal during that walk. As to the defendant's speech, background noise and sound quality make it impossible to rule out or confirm a slight slur in the defendant's speech. She does stammer on occasion and is less than articulate when speaking with Trooper McDonald. Trooper McDonald tells the defendant that he can still smell the odor of alcohol coming from her person even when she is outside of the vehicle. It is impossible to discern whether the defendant's eyes are glassy or bloodshot, as described by the trooper.

The affidavit of complaint contained within the application for a search warrant, which appears in the technical record and which was referenced by the parties and the trial court but which was not exhibited to the hearing, contains Trooper McDonald's observations that the defendant smelled "moderate[ly]" of alcohol, that her eyes were "[b]loodshot" and "[w]atery," that her speech was "[s]lurred," that her balance was "[u]nsteady," and that she was "[c]ombative" and "[i]nsulting" during their interaction. Trooper McDonald indicated on the form document that the defendant

-3-

refused both field sobriety tests and breath or blood alcohol testing. Based upon these observations, the trooper asked that a warrant be granted to obtain a sample of the defendant's blood for blood alcohol testing. A Williamson County Magistrate granted the search warrant, and the defendant's blood was drawn at the Williamson Medical Center at 1:52 a.m. The results of the blood alcohol test were not included in the record on appeal.

At the conclusion of the hearing, the trial court found that Trooper McDonald had reasonable suspicion to stop the defendant's vehicle based upon his observations of her driving. The trial court accredited some of Trooper McDonald's testimony but found that parts of his testimony were contradicted by the video recording of the stop. The court found that Trooper McDonald's testimony that he smelled a strong odor of alcohol coming specifically from the defendant's person was contradicted by his statement in the video recording that he only smelled "a little bit" of an odor when the defendant stepped out of the vehicle, where it was likely that some of the odor was coming from the defendant's "extremely intoxicated" fiancé. The court noted that Trooper McDonald's testimony that he smelled a strong odor of an alcoholic beverage coming from the defendant's person as she was seated in the back of the patrol car could not be part of the probable cause calculus because the defendant had already been placed under arrest at that point. Based upon its viewing of the video, the court concluded that the defendant did not have slurred speech, did not have dexterity issues when providing her license and registration to the trooper, and did not stumble or sway when getting out of her vehicle to walk to the back of the trooper's vehicle. The court observed that the defendant's demeanor was not belligerent and that her clothing was not soiled or otherwise in disarray. The court concluded "that there is no probable cause to believe that the defendant had committed the offense of DUI at the time she was placed under arrest." As a result, the court "suppress[ed] the arrest and any evidence that was prepared subsequent to that unlawful arrest." The court did not address the search warrant when making its ruling.

Following the trial court's ruling, the State announced that it could "not go forward" based upon the court's ruling and asked the court to dismiss the indictment.

The trial court later entered a written order suppressing "all the evidence obtained pursuant to the unlawful arrest of" the defendant on grounds that "Trooper McDonald did not have probable cause at the time he arrested" the defendant.

In this appeal as of right by the State, the State contends that the trial court erred by granting the defendant's motion to suppress, arguing that probable cause existed to arrest the defendant. The defendant asserts that no appeal as of right lies for the State

to challenge the ruling of the trial court and that, in the alternative, the trial court did not err.

## *I. Jurisdiction*

We consider first the defendant's claim that an appeal as of right does not lie for the State in this case.

Rule 3, relative to appeals as of right by the State, provides:

> In criminal actions an appeal as of right by the [S]tate lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The [S]tate may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding, from an order or judgment entered pursuant to Rule 36 or Rule 36.1, Tennessee Rules of Criminal Procedure, and from a final order on a request for expunction.

Tenn. R. App. P. 3(c). In *State v. Meeks*, our supreme court examined whether a trial court's order suppressing evidence creates a situation where the "substantive effect" of the order "results in dismissing an indictment, information, or complaint" pursuant to Rule 3(c)(1) and concluded that it does not. *State v. Meeks*, 262 S.W.3d 710, 719-20 (Tenn. 2008). Instead, the high court held that "the entry of a final order dismissing the indictment, information, or complaint is required for an appeal as of right under" Rule 3(c)(1). *Id.* at 720. The court specifically approved the procedure employed by the State in *Meeks*:

> After the State decided against pursuing the interlocutory appeal from the November 9, 2005 suppression order, it requested the trial court to dismiss the indictments against Messrs. Meeks and Snyder, apparently because the District Attorney General had concluded that the suppression of the evidence found in Room 110 eliminated any reasonable probability of a successful prosecution. In its May 19, 2006 order dismissing the indictments, the trial court specifically

found that "the suppression of the evidence . . . does present irreparable harm to the State's case in chief." This order is a final order, and, by its own terms, it resulted from the entry of the November 9, 2005 suppression order. Accordingly, following the entry of that order, the State was entitled to an appeal as of right under [Rule] 3(c)(1).

*Id.* at 721.

In the present case, the State employed essentially the same procedure as that employed in *Meeks*. After the trial court entered its order "suppress[ing] the arrest and any evidence that was prepared subsequent to that unlawful arrest," the State indicated that it could "not go forward" in light of the court's ruling and asked the trial court to dismiss the indictment. After the trial court entered an order of dismissal, the State then filed a timely notice of appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. In consequence, the State is entitled to an appeal as of right under Rule 3(c)(1).

## II. Irregularities

Having confirmed our jurisdiction in this case, we pause at this point to observe irregularities in this case.

First, the motion filed by the defendant in the trial court was a motion to dismiss more than a motion to suppress. The defendant moved the trial court to dismiss the indictment merely because, she claimed, the arrest was unlawful. Dismissal of the indictment, however, is not the proper remedy for an unlawful arrest. *See State v. Baker*, 966 S.W.2d 429, 432 (Tenn. Crim. App. 1997) (stating that "dismissal of the indictment is not . . . the proper remedy for an allegedly unlawful arrest"); *State v. Smith*, 787 S.W.2d 34, 35 (Tenn. Crim. App. 1989) ("Generally, an illegal arrest does not invalidate an indictment."); *Manier v. Henderson*, 442 S.W.2d 281, 282 (Tenn. Crim. App. 1969) ("The manner of arrest is immaterial to the validity of the indictment."); *Mullins v. State*, 380 S.W.2d 201, 202 (Tenn. 1964) ("Numerous cases are in the books and otherwise where defendants are prosecuted under indictments without being arrested prior to the return of the indictments; defendants are indicted after being released at a preliminary hearing; and in other cases *defendants are prosecuted under indictments although the initial arrest was invalid*." (emphasis added)). Instead, the appropriate remedy in the criminal justice arena for an illegal arrest is suppression of any evidence obtained as a direct or indirect result of the arrest. *See Baker*, 966 S.W.2d at 432 ("[T]he remedy for an illegal arrest typically is not dismissal of the indictment but that evidence seized as the result of an illegal arrest should be suppressed."); *Smith*, 787 S.W.2d at 35 ("Evidence

-6-

seized as a result of an illegal arrest is suppressed."). When no evidence emanates from an illegal arrest, the arrest is essentially inconsequential in the criminal justice arena.

Second, after finding that Trooper McDonald lacked probable cause to arrest the defendant, the trial court suppressed "the arrest." The phrase "suppress the arrest" is a syntactical anomaly, and we presume this to be a misstatement by the trial court.[1] *See Nelson v. State*, 470 S.W.2d 32, 33 (Tenn. Crim. App. 1971) (observing that "the law is settled in this State that there is no constitutional immunity from an unlawful arrest"); *see also Manier,* 442 S.W.2d at 282 ("There is no constitutional immunity from an unlawful arrest."). Moreover, no basis existed to suppress Trooper McDonald's testimony regarding his observations of the defendant prior to the point of any constitutional infraction. That is to say that Trooper McDonald could have testified in any subsequent trial about the defendant's behavior prior to her arrest, even assuming that the arrest was invalid.

For our purposes, "suppress" means to exclude evidence.[2] Ultimately, the trial court suppressed "any evidence that was prepared subsequent to that unlawful arrest." Before making this ruling, however, the trial court failed to consider whether the unlawful arrest actually tainted all the evidence prepared after the arrest. As indicated, in this case, the defendant sought dismissal of the indictment and did not make a direct challenge to any particular piece of evidence. One might assume that the defendant wanted suppressed the results of blood alcohol testing that showed her blood alcohol level to be above the legal limit; however, the defendant made no challenge to the search warrant that was used to obtain the blood sample for blood alcohol testing.

The failure to address the efficacy of the search warrant renders the "suppression" ruling infirm because, when a claim has been made that evidence is "fruit" of an unlawful arrest, the evidence may nevertheless be admissible if it fits within one of several recognized exceptions to the exclusionary rule. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). The question to be answered is "'whether, granting establishment of

---

[1]    After the hearing, the trial court entered an order suppressing "all the evidence obtained pursuant to" the defendant's arrest, but we note that the defendant did not challenge the admission of the blood test results.

[2]    From the oral argument before this Court, we glean that the defendant sought dismissal of the charges solely on the ground that the arrest was illegal. As such, the effort suggests an attempt to obtain a summary judgment, a result that is generally prohibited in criminal law. *See State v. Goodman*, 90 S.W.3d 557, 561 (Tenn. 2002) ("Where the factual findings necessary to resolve the [pretrial] motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence."). The trial court did not "take the bait," and although it "suppressed the arrest," it did not dismiss the case *pursuant to the defendant's motion*. The dismissal came at the behest of the State.

the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Brown v. Illinois*, 422 U.S. 590, 598-99 (1975) (citation omitted). By way of example, the Supreme Court explained,

> Three of these exceptions involve the causal relationship between the unconstitutional act and the discovery of evidence. First, the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. Second, the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. Third, . . . is the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."

*Strieff*, 136 S. Ct. at 2061 (citations omitted). Both the independent source doctrine and the attenuation doctrine could be implicated in this case because Trooper McDonald obtained a search warrant for the defendant's blood for blood alcohol testing.

"'In the classic independent source situation, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source.'" *Murray v. United States*, 487 U.S. 533, 538-39 (1988) (quoting *United States v. Silvestri*, 787 F.2d 736, 739 (1st Cir. 1986)). In this case, based upon Trooper McDonald's affidavit, the magistrate made a probable cause finding and issued the search warrant, which, if valid, could have served to remove any taint associated with the defendant's arrest. *See United States v. Ponce*, 947 F.2d 646, 651 (2d Cir. 1991) ("[T]he intervening apparently illegal detention of defendants did not taint the subsequent search because the police later obtained a valid search warrant."). The presence of information tainted by the allegedly illegal arrest in the trooper's affidavit would not necessarily invalidate the warrant, so long as sufficient untainted information supported the probable cause determination. *See, e.g.*, *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) ("In sum, authority from this and other circuits, as well as the principles underlying the *Murray* rule, support an interpretation of the independent source rule that incorporates consideration of the sufficiency of the untainted affidavit to see if probable cause exists without the tainted information."); *United States v. Smith*, 730 F.2d 1052, 1056 (6th Cir. 1984) ("[W]hen a search warrant is based partially on tainted evidence and

-8-

partially on evidence arising from independent sources, 'if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.'" quoting *United States v. Williams*, 633 F.2d 742, 745 (8th Cir. 1980)); *see also State v. Lemaricus Devall Davidson*, No. E2013-00394-CCA-R3-DD, slip op. at 22 (Tenn. Crim. App., Knoxville, Mar. 10, 2015), *app. pending* (Tenn. argued Jan. 27, 2016).

"The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence." *Strieff*, 136 S. Ct. at 2061 (2016). When making this evaluation, a reviewing court considers three factors:

> First, we look to the "temporal proximity" between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider "the presence of intervening circumstances." Third, and "particularly" significant, we examine "the purpose and flagrancy of the official misconduct."

*Id.* at 2061-62 (citations omitted). Importantly, a "valid search warrant" may be sufficient to "purge the evidence of any 'taint' arising from the" primary constitutional violation. *Segura v. United States*, 468 U.S. 796, 814 (1984); *see also Strieff*, 136 S. Ct at 2062 ("[T]he existence of a valid warrant favors finding that the connection between unlawful conduct and the discovery of evidence is 'sufficiently attenuated to dissipate the taint.'").

Given that the search warrant in this case might have purged any taint associated with the defendant's arrest, even assuming that the arrest was made without probable cause, the failure of the trial court to address the validity of the search warrant and its impact on the admissibility of the blood alcohol test requires us to vacate the trial court's order and to remand the case for further proceedings. Given that a remand is at hand, we now consider the propriety of the trial court's finding of a lack of probable cause, discerning that such further review will assist the trial court on remand and will facilitate any further review of this appeal.

### III. Reasonable Suspicion/Probable Cause

Accordingly, we turn now to the State's claim that the trial court erred by concluding that Trooper McDonald lacked probable cause to arrest the defendant and by "suppress[ing] the arrest and any evidence that was prepared subsequent to that unlawful

arrest." The defendant contends that the trial court correctly suppressed the evidence and dismissed the indictment, arguing that Trooper McDonald lacked probable cause to arrest the defendant. The defendant also claims in her brief that Trooper McDonald lacked reasonable suspicion to stop her vehicle in the first place.

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See, e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

## A. Reasonable Suspicion

We begin our analysis with the defendant's claim that Trooper McDonald lacked reasonable suspicion to stop the defendant's vehicle.

At the suppression hearing, Trooper McDonald testified that he first observed the defendant's vehicle while he was driving northbound on Interstate 65 in Williamson County. At that time, he saw her vehicle "cross over the fog line in the far right lane." After speeding up to better observe the vehicle, he saw the defendant's vehicle "cross completely over the fog line again." Trooper McDonald then "fell in behind the vehicle and it came over and touched the fog line at least 2 times."

Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2002). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective, analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

Recently, our supreme court concluded "that crossing over a fog line with two of a car's four wheels is an instance of leaving one's lane of travel" as prohibited by Code section 55-8-123, *State v. Smith*, 484 S.W.3d 393, 404 (Tenn. 2016), and held that "when an officer observes a motorist crossing a clearly marked fog line, the totality of the circumstances may provide a reasonable suspicion sufficient to initiate a traffic stop to investigate the possible violation of Section 123(1)," *see id.* at 410-11. The court observed,

> If the officer observes circumstances rendering it practicable for the motorist to remain in her lane of travel, that observation will weigh in favor of reasonable suspicion. Similarly, if the officer observes that the motorist's crossing of the fog line in some specific regard was unsafe, indicating that the driver failed to first ascertain the safety of the lane excursion, that observation will weigh in favor of reasonable suspicion.

*Id.* at 411. The court stated that to determine whether crossing the fog line provided reasonable suspicion for a traffic stop, a reviewing court must "consider, from the position of a reasonable officer, the circumstances indicative of whether the driving conditions facing the [d]efendant allowed her to remain entirely in her lane 'as nearly as practicable.'" *Id.* at 413.

In this case, Trooper McDonald testified that he observed the defendant's vehicle cross the fog line a total of four times. The video recording confirms that the defendant's vehicle crossed the fog line on more than one occasion. No evidence suggested that it was impracticable for the defendant to maintain her lane. No obstruction appears in the roadway that would have required the defendant to cross the fog line. The weather conditions were clear and dry. Based upon this evidence, we easily conclude that the evidence established that the defendant "left her lane of travel when it was practicable to remain there and/or left her lane of travel without first

-11-

ascertaining that it was safe to do so." *See Smith*, 484 S.W.3d at 412. Consequently, we affirm the trial court's ruling that Trooper McDonald had reasonable suspicion to stop the defendant's vehicle.

## *B. Probable Cause*

We next consider the State's claim that the trial court erred by concluding that Trooper McDonald lacked probable cause to arrest the defendant for DUI.

As our supreme court recently reiterated,

> "Probable cause exists when 'at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.' It requires 'more than a mere suspicion.' Instead, a probable cause inquiry focuses on probabilities rather than technicalities and is grounded in the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act."

*State v. Davis*, 484 S.W.3d 138, 143 (Tenn. 2016) (citations omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Our supreme court has "emphasize[d] that 'the strength of the evidence necessary to establish probable cause . . . is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt.'" *Davis*, 484 S.W.3d at 143-44 (quoting *State v. Bishop*, 431 S.W.3d 22, 41 (Tenn. 2014)).

In this case, "[t]he question of whether the arrest was supported by probable cause depends upon whether at the time the arrest was made there were facts and circumstances within the officer's knowledge which would warrant a man of prudence and caution in believing that the defendant had committed" DUI. *State v. Evetts*, 670 S.W.2d 640, 642 (Tenn. Crim. App. 1984). To this end, "[a]ll information in the officer's possession, fair inferences therefrom, and observations, including past experiences, are generally pertinent." *Id.*

-12-

Although it is generally true that "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact," *see Odom*, 928 S.W.2d at 23, "when a court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as . . . videotape evidence . . . the rationale underlying a more deferential standard of review is not implicated," *see Binette*, 33 S.W.3d at 217. "'In such circumstances, a trial court's findings of fact are subject to de novo appellate review.'" *State v. Turner*, 305 S.W.3d 508, 514 (Tenn. 2010) (quoting *State v. Payne*, 149 S.W.3d 20, 25 (Tenn. 2004)). Because the trial court based its conclusion that Trooper McDonald lacked probable cause to arrest the defendant on its own viewing of the video recording of the traffic stop, which is included in the record on appeal, our review is de novo. *See Turner*, 305 S.W.3d at 514.

Here, Trooper McDonald testified that he observed the defendant's vehicle weaving on Interstate 65, four times touching or crossing the fog line. When he approached the defendant's vehicle after effectuating a traffic stop, he was immediately struck by a strong odor of alcohol. Admittedly, the defendant's fiancé, who was in the passenger's seat, was "extremely intoxicated." Trooper McDonald said that even after the defendant exited the vehicle, he could still smell an odor of alcohol emanating from her person. Trooper McDonald testified that the defendant's eyes were glassy and bloodshot, that her speech was slurred, and that she walked with a "heavy footed" gait.

The trial court concluded that the video recording belied the officer's testimony regarding the defendant's odor of alcohol, her speech, and her gait. Upon our de novo review of the video recording, we disagree. The recording is short, totaling approximately eight minutes. The recording confirms that Trooper McDonald told the defendant that he could still smell an odor of alcohol coming from her even after she got out of the car and stood on the side of the interstate. The quality of the video recording is insufficient, in our view, to determine whether the defendant's eyes appear glassy or bloodshot, as claimed by Trooper McDonald. With regard to the defendant's gait, she is seen walking on the video only a short distance from her vehicle to Trooper McDonald's cruiser. She does not appear to be unsteady on her feet, and she certainly did not stagger. We cannot say that she did not walk with a "heavy footed" gait, as described by the trooper. With regard to the defendant's speech, again our review is somewhat hampered by the sound quality in the video. A great deal of road noise is audible. The defendant's speech is certainly not overly slurred, but she does stammer on several occasions and is less than articulate as she speaks with Trooper McDonald. We agree with the trial court that the defendant did not appear disheveled and did not struggle with dexterity when retrieving her driver's license, but we note that Trooper McDonald never made any claims with regard to the defendant's appearance or her manual dexterity. Based upon the totality of the circumstances, we conclude that Trooper McDonald had probable cause

to arrest the defendant.  In consequence, we reverse the ruling of the trial court granting the defendant's motion to suppress.[3]

*Conclusion*

The trial court erred by suppressing all evidence emanating from the arrest without considering the effect of the post-arrest search warrant, and furthermore, under the totality of the circumstances, probable cause existed for the defendant's arrest. Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____

JAMES CURWOOD WITT, JR. JUDGE

---

[3] Because we have determined that the evidence otherwise establishes that Trooper McDonald had probable cause to arrest the defendant, we do not consider the State's claim that the defendant's refusal to perform field sobriety tests can be part of the probable cause calculus as it is in other states. *See State v. Babbitt*, 525 N.W.2d 102, 105 (Wis. Ct. App. 1994) ("Thus, because the defendant's refusal to submit to a field sobriety test is some evidence of consciousness of guilt, this evidence should be admissible for the purpose of establishing probable cause to arrest."); *Jones v. Com.*, 688 S.E.2d 269, 272-73 (Va. 2010) ("Accordingly, we hold that in determining whether a police officer had probable cause to arrest a defendant for driving under the influence of alcohol, a court may consider the driver's refusal to perform field sobriety tests when such refusal is accompanied by evidence of the driver's alcohol consumption and its discernable effect on the driver's mental or physical state.").