UNITED STATES of America, Appellee,

v.

Edward Corbit HOULE, Appellant.

No. 78–1876.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1979.

Decided Aug. 17, 1979.

David Garcia, Devils Lake, N. D., for appellant.

James R. Britton, Fargo, N. D., for appellee.

Before LAY, ROSS and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

The sole issue in this case is the question left undecided in *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), whether or under what circumstances an officer must obtain a warrant before he may lawfully enter a private place to effect an arrest.[1]

The defendant was convicted under 18 U.S.C. §§ 111 and 1114 of willfully and by means and use of a dangerous weapon, a rifle, forcibly assaulting, resisting, opposing, impeding, intimidating and interfering with law enforcement officers of the United States of America while they were engaged in the performance of their official duties. This appeal followed.

The parties do not dispute the facts. In the early morning hours of September 5, 1978, the Bureau of Indian Affairs police department received a complaint that the defendant had threatened to shoot Sandra Houle at her father, Oscar Houle's residence on the Turtle Mountain Indian Reservation at Belcourt, North Dakota. When the investigating officers arrived at the home, Sandra Houle and her father reported that the defendant had been drinking

and making threats and was on his way to shoot them. The officers then heard two gun shots which one officer identified as coming from the direction of Edward Houle's house. They removed Sandra Houle and her two children from the house and took them to the Belcourt police station, arriving there at approximately 2:40 A.M. Shortly before their arrival the police dispatcher received a call from a person who identified himself as Edward Houle. The caller stated that he wanted the officers to leave the area and to come back to talk to him in the morning. He also stated that he had a gun and that he would shoot any officer who came into his yard. The officers decided to delay action until the morning. At approximately 6:40 A.M. they went to the defendant's house to arrest him. It is undisputed that the officers made no attempt to obtain a warrant for Edward Houle's arrest during the intervening four hours.

When the officers arrived at the house, they looked through a broken window and saw someone sleeping on a bed about five or six feet from a rifle lying on a chair. One of the officers reached through the broken window and seized the rifle. The others then kicked down the door and entered the home arousing Edward Houle from his sleep and arrested him. At the time of the arrest officers found two spent cartridges on the floor about an inch apart. At trial the defendant objected to the admission into evidence of the rifle, the clip

1. *See United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (Stewart, J., concurring):

The arrest in this case was made upon probable cause in a public place in broad daylight. The Court holds that this arrest did not violate the Fourth Amendment, and I agree. The Court does *not* decide, nor could it decide in this case, whether or under what circumstances an officer must obtain a warrant before he may lawfully enter a private place to effect an arrest.

*Id.* at 433, 96 S.Ct. at 832.

Mr. Justice Powell observed of Mr. Justice Stewart's concurring opinion:

It makes clear that we do not today consider or decide whether or under what circum-

stances an officer lawfully may make a warrantless arrest in a private home or other place where the person has a reasonable expectation of privacy.

*United States v. Watson*, 423 U.S. at 432–33, 96 S.Ct. at 832 (Powell, J., concurring) (footnote omitted).

This issue is before the Supreme Court in *Riddick v. New York*, 45 N.Y.2d 300, 408 N.Y. S.2d 395, 380 N.E.2d 224, *prob. juris. noted*, 439 U.S. 1045, 99 S.Ct. 718, 58 L.Ed.2d 703 (1978). The case was argued March 26, 1979, 47 U.S. L.W. 3651 (April 3, 1979). Submission to the Court was vacated, however, and the case was set for reargument this fall. *See* —— U.S. ——, 99 S.Ct. 2049, 60 L.Ed.2d 658 (1979).

removed from the rifle, and the two spent cartridges.[2]

The trial court overruled the defendant's motion to suppress the evidence. Relying upon *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the court found that there had been probable cause to make the arrest so that no warrant had been necessary. We cannot agree that *United States v. Watson* is determinative.

The defendant argues on appeal that his warrantless arrest violated the Fourth Amendment. In *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Supreme Court held that a warrantless arrest in a public place based on probable cause does not violate the Fourth Amendment. It is undisputed in this case, however, that defendant's arrest took place in his home. The parties agree that under these circumstances the *Watson* decision is not controlling.

■ The competing values involved in warrantless entries into the home to arrest have been discussed at length in opinions of the United States Supreme Court[3] and in decisions in the federal and state courts.[4] We see little merit in repeating that discussion in this opinion. After reviewing these authorities we conclude that a warrantless search and seizure conducted on private premises in the absence of exigent circumstances violates the Fourth Amendment. *See Coolidge v. New Hampshire*, 403 U.S.

443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Jones v. United States*, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *Johnson v. United States*, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The Supreme Court recently held in *Brown v. Texas*, —— U.S. ——, ——, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) that "seizure" for purposes of the Fourth Amendment includes all seizures of the person and that such seizures, therefore, must be reasonable. *See also United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The vast majority of state and federal decisions have applied the same Fourth Amendment standards to warrantless entries to search as they have to warrantless entries to arrest. *See* notes 3 & 4 *supra*. *See also* Comment, *Watson and Santana: Death Knell for Arrest Warrants?*, 28 Syracuse L.Rev. 787, 791 (1977). Although the Supreme Court has indicated that the question remains open, we feel that until the Court has issued a mandate to the contrary the plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), articulates the principle most in accord with our view. As Mr. Justice Stewart observed in that opinion,

2. The record is silent as to where the two spent cartridges came from and whether the rifle had been fired. No evidence was found of bullet holes in any of the homes or vehicles.

3. *See, e. g., United States v. United States District Court*, 407 U.S. 297, 315–17, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 477–81, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chimel v. California*, 395 U.S. 752, 760–62, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Jones v. United States*, 357 U.S. 493, 496–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *Miller v. United States*, 357 U.S. 301, 306–14, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Johnson v. United States*, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *McDonald v. United States*, 335 U.S. 451, 455–56, 69 S.Ct. 191, 93 L.Ed. 153 (1948). *See also United States v. Santana*, 427 U.S. 38, 47–48, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (Marshall, J., dissenting).

4. *See e. g., Salvador v. United States*, 505 F.2d 1348 (8th Cir. 1974); *United States v. Campbell*, 581 F.2d 22 (2d Cir. 1978); *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978); *United States v. Killebrew*, 560 F.2d 729 (6th Cir. 1977); *United States v. Phillips*, 497 F.2d 1131 (9th Cir. 1974); *United States v. Shye*, 492 F.2d 886 (6th Cir. 1974); *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc); *Lankford v. Gelston*, 364 F.2d 197, 205–06 (4th Cir. 1966); *Morrison v. United States*, 104 U.S.App.D.C. 352, 262 F.2d 449 (1958); *State v. Cook*, 115 Ariz. 188, 193–94, 564 P.2d 877, 882–83 (1977); *People v. Ramey*, 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333, *cert. denied* 429 U.S. 929, 97 S.Ct. 335, 50 L.Ed.2d 299 (1976); *People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1971).

It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se* legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined "exigent circumstances."

*Id.* at 477–78, 91 S.Ct. at 2044.[5]

■ Although the Government urges that exigent circumstances did exist relying upon *United States v. Garcia Mendez,* 437 F.2d 85 (5th Cir. 1971), we cannot agree.[6] This is not a case involving hot pursuit. The officers' deliberate four hour delay from 1:50 A.M. to 6:30 A.M., indicates that the officers had no reason to believe, and did not believe, that the defendant would attempt to escape or destroy the evidence in his possession. It is undisputed that the officers made no attempt to obtain a search or arrest warrant during that period of delay. Any exigency that arose by virtue of the presence of the rifle near the bed could have been anticipated by the officers and does not excuse their earlier failure to obtain a warrant. Without a proper search or arrest warrant the seizure of the gun within the house was illegal. Even if, arguendo, that seizure had been lawful, it disposed of any justification officers might have had for kicking down the door and entering the defendant's home without a warrant; the officers had secured the only

visible weapon.[7] In short, our review of the record fails to disclose evidence that any exigency justified the warrantless entry and seizure.[8]

■ We conclude that the warrantless intrusion into the home is one that cannot be sanctioned under the Fourth Amendment even for the purpose of private arrest, absent exigent circumstances. *See United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 820, 46 L.Ed.2d 498 (1972) (entry of the home is the chief evil against which the Fourth Amendment is directed); *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (the right to be free, except in limited circumstances, from unwarranted governmental intrusions into the privacy of the home is fundamental to our free society); *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961) (at the core of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."); *Mapp v. Ohio,* 367 U.S. 643, 646, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081 (1961) (Fourth Amendment applies "to all [governmental] invasions . . . of the sanctity of a man's home and the privacies of life."); *Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949) (security of privacy in the home against arbitrary governmental intrusion is basic to a free society); *McDonald v. United States,* 335 U.S. 451, 455–56, 69 S.Ct. 191,

---

5. *See also Coolidge v. New Hampshire,* 403 U.S. at 480–81, 91 S.Ct. 2022, wherein the Court concluded that *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) "certainly stands by negative implication for the proposition that an arrest warrant is required [to enter the home] in the absence of exigent circumstances."

6. *Garcia Mendez* is clearly distinguishable. In that case the issue was whether the officers, who went to the defendant's home for the purpose of executing a search warrant, were justified in not complying with 18 U.S.C. § 3109, the notice of authority and purpose statute, because of their observation through a window of an automatic pistol lying inches from the hand of the sleeping defendant. The issue before us is not whether the *method* of entry was lawful,

but whether the officers' failure to obtain a warrant was justified.

7. It is urged that the defendant might have had other weapons; this is pure speculation. There is no evidence that the officers had any reasonable apprehension that the defendant had other weapons at the time of his arrest.

8. *Cf. Dorman v. United States,* 140 U.S.App. D.C. 313, 435 F.2d 385 (1970) (en banc) (justification for warrantless entry evidenced, *inter alia,* by the possibility that delay would permit escape, by the fact that the delay in the arrest was not of the police officers' making and that officers had attempted to obtain a warrant, and by the peaceful nature of the entry which was made after announcement of authority and purpose).

93 L.Ed. 153 (1948) (right of privacy in the home is too precious to entrust to police discretion and absent some grave emergency the Constitution requires magistrate's approval before the police may violate the privacy of the home); *Johnson v. United States*, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (when the right or privacy in the home must yield to the right of search is to be decided by a judicial officer absent exceptional circumstances).[9]

Finding that the district court erred in failing to suppress the evidence, the judgment is ordered vacated; the mandate shall issue forthwith and the defendant shall be released from the penitentiary, subject to the appropriate bond in the event that the Government determines that he shall be retried.

---

**9.** We find Judge Frank's eloquent description of the importance of the sanctity of the home particularly apropos:

A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizeable hunk of liberty—worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle.

*United States v. On Lee*, 193 F.2d 306, 315–16 (2d Cir.) (Frank, J., dissenting), *aff'd* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).