UNITED STATES of America, Appellee,

v.

Russell Dean JONES, Appellant.

No. 80–1600.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1980.

Decided Dec. 9, 1980.

Brian H. Miller, Minneapolis, Minn., for appellant.

Sheryl Ramstad Hvass, Asst. U. S. Atty., Dist. of Minnesota, Minneapolis, Minn., for appellee.

Before HEANEY, ADAMS * and STE-PHENSON, Circuit Judges.

* The Honorable Arlin M. Adams, United States Court of Appeals for the Third Circuit, sitting by designation.

ADAMS, Circuit Judge.

Appellant Russell Dean Jones was convicted on three charges of firearms violations and sentenced to a prison term of thirty months. On this direct appeal Jones contends that the district court erred in denying his pretrial motion to suppress evidence seized during a warrantless entry into his apartment. The district court held that the entry was justified by "exigent circumstances" that obviated the need to obtain a warrant. Since we do not believe that the conclusion reached by the district court is erroneous, we affirm the convictions.

FACTS

On December 30, 1979, at approximately 1:40 a. m., the Police Department of Prior Lake, Minnesota, received reports that a man had been seen firing shots down Main Street, and that he had then staggered into the doorway to the second floor apartment over a Main Street store. The citizen who furnished this information also informed the police that he had not seen anyone else enter or leave the apartment during these events. The police officers responding to the call were aware that the apartment was rented to Russell Dean Jones, and that Jones had a prior felony conviction stemming from a shooting incident. The officers did not, however, have any information indicating that Jones was the person who had fired the shots or had entered the apartment.

After blocking off the area in front of the building containing the apartment, the police confirmed, with the building owner, that Jones lived in the apartment and that the front door was the only entrance to the premises. They then obtained Jones' telephone number and attempted to communicate by telephone with anyone who may have been in the apartment. The call went unanswered, but the officers could hear loud music emanating from within the

apartment. The officers then determined that the front door was locked. They knocked loudly on the door several times, but again received no response. The officers proceeded to resort to a public address system to attempt to persuade the occupants of the apartment, if there were any, to emerge. After this effort proved unsuccessful, the police telephoned the landlord of the building and requested that he make available the keys to the apartment.

While the police were waiting for the landlord, Michael Pehrson, Jones' roommate, arrived at the scene. The officers apprised Pehrson of the situation, and requested that he provide them with access to the apartment. Pehrson refused to let the officers use his key, but offered instead to go into the apartment alone to check on the wellbeing of his roommate or any other occupant. The police declined this offer, and explained that they "didn't know whether [Jones] was still shooting, or if he had shot himself or if he would shoot [Pehrson] if [Pehrson] walked in."

The landlord soon arrived, but he apparently did not have a key to unlock the front door. Consequently, the police decided to force the door open, and they entered the building. This initial entry did not occur until approximately one hour after the police had arrived at the building. The police explained the decision to force their way into the building by stating that they "were immediately concerned for the community, for Mr. Jones, and for anybody up in the apartment with Mr. Jones." Once inside, the officers climbed the stairway leading to the door to the apartment itself, and discovered that this door was also locked. The officers pounded on this door for several minutes, and also yelled in order to identify themselves over the blaring music. There was still no response. While knocking on the door, the officers smelled the acrid odor of something burning. As a result, they asked the landlord for a key to open the door to the apartment. The landlord furnished the police with the key, and the

officers entered the apartment. There they observed Jones lying prone on the living room sofa, his legs straight out and his head thrown back. He appeared to be either asleep or unconscious. Three guns were also plainly evident in the room. When the police traced the source of the burning odor, they found a smoldering pan on a lighted stove. The police did not immediately seize the weapons, nor did they search the apartment any more than was necessary to locate the source of the burning smell. Instead, one officer departed to secure a search warrant. Jones was arrested and later indicted for violations of 18 U.S.C. §§ 922, 924 (1976), statutes dealing with the unlawful possession of firearms.

During pretrial proceedings Jones moved to suppress all observations made by the officers, as well as the evidence seized by them, on the ground that the entry into the apartment was made without a warrant. The district court concluded, after carefully reviewing the facts, that an emergency had existed at the time the officers sought access to the apartment, thus justifying their warrantless entry. In support of this holding, the district judge declared that 1) the police reasonably could have concluded that citizens and police officers in the vicinity of the apartment would be in danger if the occupant resumed firing the gun; 2) the police were justified in feeling pressing concern for the health and safety of the apartment occupant, given that the individual had been reported as staggering into the building; 3) the failure to elicit any response from inside the apartment augmented the officers' concern for any occupant of the apartment; and 4) during the one–hour delay between arrival and entry no new facts came to the attention of the police suggesting that the danger had subsided. Under these circumstances, the district court concluded, the police had acted in a reasonable and prudent fashion in seeking to avoid entry by attempting to establish communication, and when that failed, in gaining entry with the landlord's key rather than forcibly, and finally, in refraining

from a full–scale search and seizure until a warrant had been obtained.

## JONES' MOTION TO SUPPRESS

■ Although the Fourth Amendment jurisprudence developed by the United States Supreme Court exhibits a strong preference for searches and entries conducted under the judicial auspices of a warrant,[1] the Court has crafted a few jealously and carefully drawn exceptions to the warrant requirement to cover those situations where "the public interest require[s] some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search." *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). One such exception is that the police may enter premises and conduct a search if "exigent circumstances" exist that make it impracticable to obtain a warrant. Under this exception it has been held that the police may search the scene of a homicide to determine whether the killer or other victims are still present. See *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). The police may also engage in a reasonable warrantless entry when delay would gravely endanger the lives of the public or of police officers. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978); *United States v. Easter*, 552 F.2d 230 (8th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). Warrantless entries have also been sustained when undertaken to render emergency aid to someone reasonably believed to be in distress and in need of assistance, or when lives may be in jeopardy. *United States v. Goldenstein*, 456 F.2d 1006 (8th Cir. 1972), *cert. denied sub nom. Ray v. United States*, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 349 (1974); *Root v. Gauper*, 438 F.2d 361 (8th Cir. 1971).

Turning to the facts of the present case, it must be determined whether exigent circumstances similar to those set forth in the cases referred to above existed at the time the police arrived in the vicinity of Jones' apartment and whether those circumstances continued to present themselves when the police forced open the front door approximately one hour later.

■ After reviewing the findings and statements of reasons advanced by the district judge, we are persuaded that the police reasonably believed that they faced an emergency. It is firmly established that a finding of exigent circumstances will not be disturbed unless it is clearly erroneous. See, e. g., *United States v. Williams*, 604 F.2d 1102, 1121 (8th Cir. 1979); *United States v. Kulcsar*, 586 F.2d 1283, 1286 (8th Cir. 1978); *United States v. Flickinger*, 573 F.2d 1349, 1357 (9th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *United States v. Bradshaw*, 515 F.2d 360, 365 (D.C.Cir.), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1975).

■ According to the standard announced by the Supreme Court, a finding is not clearly erroneous unless, after reviewing the entire evidence, the Court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). We cannot say that our review of the facts provides a basis, firm or otherwise, for believing that the district judge committed error. The information received by the police reasonably led them to believe that the individual in the apartment was either dangerous and likely to resume shooting, or was injured in some way. The lack of response from the apartment reinforced this conclusion. Thus, the police reasonably could have concluded that the lives of the public or the officers were in danger, as in *Hayden* and *Picariello, supra*, or that

---

1. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

immediate entry was necessary to render emergency aid, as in *Goldenstein* and *Root supra.* When the police gained access to the building through the downstairs door, the need to enter the apartment without delay became even more pressing, for at that time they smelled smoke emanating from the apartment.

■ In attacking the district judge's denial of the motion, Jones emphasizes that the individual reported to be firing a gun down Main Street was not suspected of having committed a felony,[2] and that the police received no report or other indication of injury to persons or property. Appellant points to *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970), to support his position. In *Dorman* the court held that the gravity of the offense is an important factor to be considered in determining whether exigent circumstances exist.[3] This aspect of *Dorman*, however, was intended only to be a guideline, rather than an absolute test for the presence of exigent circumstances, because such a determination ultimately depends on the unique facts of each controversy. In the present case, even though the substantive offense might have involved merely a state law misdemeanor, the firing of gun shots down the main street of a town constitutes an inherently alarming and dangerous situation requiring a quick investigative response from the police. The gravity of the shooting incident is also not controlling here because while they were seeking entry to the apartment the police believed that the occupant was either arm-

ed and hiding or unable to respond because of an injury.

Jones also asserts that the one hour delay between the time the police first arrived at the scene and the moment they gained entry negates any belief the police may have had that the situation constituted an emergency. In this regard, appellant relies on *United States v. Houle*, 603 F.2d 1297 (8th Cir. 1979), in which this Court held that a warrantless home arrest was not justified under the exigent circumstances exception because the police had deliberately waited four hours, without making any effort to secure a warrant, before going into the defendant's home.

■ In *Houle* the police delayed because they did not believe there was any danger or that the suspect would try to flee. The case at hand is distinguishable from *Houle*, because rather than intentionally stalling, the police were busily engaged in solving the problem, which they continued to believe was a dangerous one. Even though they did not have definite evidence that immediate emergency aid was necessary, see *Root v. Gauper*, supra,[4] or that a serious felony demanding immediate action had been committed, see *Warden v. Hayden*, supra, the police could reasonably have concluded, based on the reported shots, the lack of response from the apartment, the music indicating someone was in the apartment, and the burning smell, that the situation was a dangerous one. Any delay that occurred was primarily the result of careful police work, as the officers first sought to

---

**2.** Under Minnesota law, discharging a weapon in public is merely a misdemeanor. Minnesota law also requires a warrant before a person may be arrested on suspicion of having committed a misdemeanor. The state law requirement, however, does not override the exigent circumstances exception to the warrant rule, a standard derived directly from the Fourth Amendment.

**3.** *Dorman* suggests that the type of offenses that would militate against a finding of exigent circumstances are nonviolent crimes such as gambling or narcotics offenses.

**4.** Appellant's reliance on *Root* is also misplaced. In *Root* the Court held that the police could not have entertained a good faith belief that they were faced with an emergency situation, because they knew the distressed victim had been removed from the premises in an ambulance. The Court noted that its conclusion was buttressed by the officers' delay before making the warrantless entry. The present case is distinguishable from *Root* because the officers here had no reason to conclude that the emergency had subsided during the hour.

elicit a response from the suspect and then attempted to obtain a key in an effort to avoid a forcible entry.[5]

 This case is therefore far closer to *United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978), than to *Houle*. In *Picariello* the court held that a six hour delay between the time the police first had probable cause to conduct a search and the time they gained entry to defendant's home did not remove the exigency of the circumstances. The police reasonably believed that the defendant was harboring volatile explosives in his home, and they had devoted the six hours to gathering carefully all the information known or available to them before proceeding. Here, as in *Picariello*, the police cautiously pursued a course of action appropriate to the particular danger presented in the circumstances. When the police have a reasonable suspicion that someone is injured or that the public safety is in jeopardy, but refrain from taking immediate action in an effort to confirm or deny the suspicion, and then act once they have received no indication that the danger has been dissipated, the waiting period does not defeat the applicable exception to the warrant rule. See also *United States v. Kulcsar*, 586 F.2d 1283 (8th Cir. 1978) (delay that is reasonable under the circumstances is not fatal to a finding of exigent circumstances).

Appellant also argues that an emergency no longer existed once Pehrson, his roommate, arrived, because Pehrson offered to check on the situation in the apartment. The police acted sensibly, however, in not permitting Pehrson to enter the premises. It was the responsibility of the officers alone to insure the public safety and to investigate possible violations of the

law, and so long as they believed a danger existed they should not have sent Pehrson into the source of the danger to carry out their duty for them.

For the foregoing reasons the judgment of the district court is affirmed.

---

5. The delay in this case is thus different from that in cases where the police deliberately waited for several hours, or where there was a showing that a warrant could easily have been obtained during the wait. See *Houle*, supra. This is also not a case where the police consciously sought to avoid the warrant require-

ment, see *United States v. Shye*, 492 F.2d 886 (6th Cir. 1974). Indeed, the police here demonstrated their good faith by their subsequent decision to obtain a warrant before conducting a thorough search of the apartment and before seizing the weapons that were in plain view.