# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  06-3501

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Nebraska. |
| Michael A. Valencia, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2007
Filed: August 23, 2007

_____

Before MELLOY, SMITH, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Police officers entered the apartment of Michael A. Valencia without a warrant, performed a protective sweep, and thereafter obtained a search warrant and recovered a short-barreled shotgun from the home.  The government charged Valencia with possession of an unregistered firearm.  26 U.S.C. §§ 5841, 5861(d), and 5871. Valencia claimed that the initial, warrantless entry into his home violated the Fourth Amendment, and he moved to suppress the shotgun as the fruit of the allegedly

unconstitutional search. The district court[1] denied the motion because it found that exigent circumstances rendered the officers' warrantless search of the home reasonable under the Fourth Amendment. Valencia entered a conditional guilty plea preserving his right to appeal the denial of his motion to suppress evidence. Valencia now exercises that right, and we affirm.

## I. BACKGROUND

At 12:28 a.m. on the morning of November 21, 2004, Lincoln, Nebraska police officers Travis Ocken and Tom Domanski received a dispatch that several callers had reported that someone had fired multiple shotgun shells from an apartment building in central Lincoln. According to the dispatch, shotgun pellets had fallen in a parking lot across the street, the shots had come from apartment five, and the suspected shooter was a Hispanic male.

Ocken and Domanski arrived at the scene and encountered Valencia, who was walking away from the building. Valencia admitted that he lived in apartment five, and later stated that there was no one in the apartment. After conducting a pat-down search and finding no weapons, Ocken questioned Valencia about the reports of gunshots originating from his apartment. Valencia claimed ignorance, and Ocken escorted him to his police cruiser for detention pending further investigation of the reported gunshots.

Meanwhile, Domanski entered the apartment building to question Hussain Al-Waely, a building tenant who lived in the unit immediately below apartment five and had called to report the gunshots. Al-Waely told Domanski and Sergeant Jeff Bucher,

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

who arrived shortly after Domanski made contact with Al-Waely, that he heard one shot come from apartment five. He said that Kristina Christensen, who claimed to live in apartment five with her boyfriend, then came to Al-Waely's apartment. Al-Waely heard several more gunshots after Christensen arrived, and Al-Waely called the police. Christensen, who was present in Al-Waely's apartment during the questioning, told officers that no one was in apartment five. She was uncooperative in answering other questions about the incident.

Another officer arrived at the scene to assume supervision over Valencia in the police cruiser while Ocken joined Bucher and Domanski. After checking common areas inside and outside the apartment building and failing to find any physical evidence, Bucher, Domanski, and Ocken met and discussed the need to determine whether the shooter or any victims were still within apartment five. Around 12:45 a.m., they decided to enter the apartment. After knocking on the door and receiving no response, Domanski spent roughly ten minutes unsuccessfully trying to pick the lock. At that point, Captain Jonathan Sundermeier arrived and ordered the officers to kick in the door to gain entry. The officers did so, and they entered the apartment at 1:01 a.m., thirty-three minutes after receiving the initial dispatch regarding the gunshots.

Domanski and Ocken made a two-minute protective sweep of the apartment, finding no victims but noticing shotgun shells and casings on the floor. They did not seize any evidence. They exited the apartment, and Domanski stood guard at the door while Ocken and Sundermeier obtained a search warrant. Two hours later, with a warrant in hand, the officers re-entered the apartment and performed a thorough search. They seized a .12 gauge short-barreled shotgun, expended shell casings, and a spilled box of live shells.

The government indicted Valencia for possession of an unregistered firearm. Valencia moved to suppress evidence seized from the apartment, arguing that it

constituted the fruits of a warrantless, unconstitutional search of his apartment. A magistrate judge held a hearing on the motion and recommended denying it. The magistrate judge found that exigent circumstances—including urgent health and safety concerns related to the possibility that victims, the shooter himself, and/or the weapon remained inside the apartment—justified the warrantless entry. The district court agreed and adopted the magistrate judge's report and recommendation.

Valencia thereafter entered into a plea agreement with the government, whereby he pled guilty but reserved the right to appeal the district court's denial of his motion to suppress evidence. He now brings that appeal, arguing that the district court erred in finding that exigent circumstances justified the search under the Fourth Amendment.

## II. DISCUSSION

In an appeal of a motion to suppress evidence, we review the district court's factual findings for clear error and its ultimate determination of whether those facts amounted to a constitutional violation de novo. United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004). When the government enters a defendant's home without a warrant, we presume that the search was unreasonable and therefore in violation of the Fourth Amendment. Welsh v. Wisconsin, 466 U.S. 740, 750 (1984). This presumption is rebuttable in certain situations, however. One such situation exists when the government demonstrates that exigent circumstances "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 394 (1978). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." Brigham City v. Stuart, 126 S. Ct. 1943, 1947 (2006). A search under the exigent-circumstances doctrine is reasonable "as long as the circumstances, viewed *objectively*, justify [it]." Id. at 1948 (quotation omitted). The searching officers' subjective motivations are irrelevant. Id.

In this case, the circumstances giving rise to exigency are clear. Several shotgun blasts were heard coming from an urban apartment. Some pellets landed across the street. When police arrived, they encountered the apparent tenant of the apartment where the shots allegedly originated, and he denied responsibility. Another part-time occupant refused to shed any light on the situation. As a result, all the police officers could have reasonably known at the time they entered Valencia's apartment was that a deadly weapon had been fired multiple times by someone from that location roughly thirty minutes earlier, and some pellets from one or more of those shells landed across the street. The other shells were unaccounted for, no one had confessed to firing a weapon, and no weapon had been found. Viewing the circumstances objectively, these facts create clear justification for a reasonable law-enforcement officer to enter the apartment without a warrant to secure the shotgun and to discern if the shooter or any victims in need of medical attention remained inside. See Janis, 387 F.3d at 687-88 (finding exigent circumstances sufficient to justify warrantless entry into a home to secure a recently discharged handgun); United States v. Arcobasso, 882 F.2d 1304, 1306 (8th Cir. 1989) (finding exigent circumstances sufficient to justify warrantless entry into a home where shots had been fired, even after arresting the presumed shooter, to ascertain whether there was "a shooting victim or another armed person inside").

Valencia nevertheless argues that the apparent exigency of the situation given the above facts is undercut by police officers' actions upon arriving at the scene. The officers did not immediately enter the apartment, but rather interviewed Valencia, Christensen, and Al-Waely, scanned the area for evidence, and spent ten minutes unsuccessfully attempting to pick the lock before finally kicking down the door. Furthermore, Valencia contends that they had taken the suspect (him) into custody, Christensen had told officers that no one else was inside the apartment, and no shots were fired after officers arrived. If the situation was truly so urgent as to justify a warrantless entry into the apartment—if the officers truly believed that the shooter,

a victim in need of aid, or some other emergency awaited them there—Valencia argues that the officers would have entered more swiftly.

Valencia's argument fails for several reasons. While the officers' actions might suggest that they did not subjectively possess an overwhelming suspicion that they would find any victims or immediate threats in the apartment, we evaluate the constitutionality of the search by looking only to whether they "had an objectively reasonable basis for believing" that exigent circumstances necessitated warrantless entry into the apartment. Stuart, 126 S. Ct. at 1949. For the reasons stated above, the facts of this case presented the officers with just such an objectively reasonable basis for the search, regardless of their subjective expectations when they broke down the door.

Further, to the extent that Valencia argues that his custody and the time lapse between the gunshots and the officers' entry had eliminated the exigency of the situation, we disagree. First, Valencia denied having fired any weapons, and thus generated a reasonable basis for officers to believe that the shooter may still be inside the apartment. Second, officers knew that several shells had been fired and both Valencia and Christensen gave evasive responses to their questions, thus giving rise to the possibility that one or more victims could be inside. Under such circumstances, the lapse of roughly thirty minutes could not have objectively served to reduce the exigency of the situation by such a degree as to render the search unconstitutional. See United States v. Jones, 635 F.2d 1357, 1361-62 (8th Cir. 1980) (holding that the police responded properly to an exigent circumstance created by a gunshot when they took one hour to conduct "careful police work . . . [first seeking] to elicit a response from the suspect and then attempt[ing] to obtain a key in an effort to avoid forcible entry").

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____