# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3706

_____

United States of America,           *
                                       *

        Plaintiff - Appellee,     *
                                       * Appeal from the United States

      v.                       * District Court for the
                                       * District of Nebraska.

David Santana-Aguirre,      *
                                       *

        Defendant - Appellant.   *

_____

Submitted: March 27, 2008
Filed:  August 12, 2008

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

David Santana-Aguirre appeals the district court's[1] denial of his motion to suppress evidence obtained during a search of his suitcase.  Santana-Aguirre consented to a search of his suitcase.  A drug interdiction investigator found two wax candles in the suitcase, cut into them, and discovered methamphetamine.  After the denial of his motion, Santana-Aguirre conditionally pled guilty to possession with

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.  The district court adopted the Report and Recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

intent to distribute methamphetamine and was sentenced to 120 months. Santana-Aguirre appeals, arguing that the scope of the search exceeded the scope of his consent.

I.

Two investigators, Richard Lutter and Alan Lynn Eberle, Jr., from the Nebraska State Patrol Commercial Interdiction Unit were assigned to an Omaha bus terminal to look for drug couriers. While watching passengers disembark from a bus originating on the West Coast, Investigator Eberle's attention was drawn to Santana-Aguirre, who was holding a medium-sized carry-on suitcase tucked under his arm. Santana-Aguirre met and conversed with another individual, later identified as co-defendant Julian Arana-Santibanez. Santana-Aguirre set the suitcase down but leaned it against his body. He looked very nervous and kept looking over his shoulder. After conversing, they walked single file toward the entrance of the bus station.

Investigator Lutter arrived at the bus station and as he approached the terminal, he observed two individuals, the co-defendants, walking single file along the side of the terminal. Investigator Lutter noted this abnormality and started to walk towards them. Investigator Lutter saw Investigator Eberle following the co-defendants and making a hand gesture to indicate that he wanted to speak with the co-defendants. Investigator Lutter approached and began speaking with Santana-Aguirre. Investigator Lutter communicated that he was a law enforcement officer, produced his badge, and informed Santana-Aguirre that he was not under arrest. Santana-Aguirre did not understand, and so Investigator Lutter repeated his earlier statements in Spanish. He asked Santana-Aguirre if he understood—"Comprendo?" Santana-Aguirre stated "yes."

In Spanish, Investigator Lutter asked for Santana-Aguirre's identification and bus ticket. Investigator Lutter noticed the identification looked similar to other

identifications that proved fictitious. He also noticed that the bus ticket was one-way and was purchased for cash. Investigator Lutter knew that drug couriers often used one-way tickets paid for with cash. He asked Santana-Aguirre if he possessed any illegal substances, and Santana-Aguirre responded negatively. Investigator Lutter asked for permission to search Santana-Aguirre's body and suitcase. In an affirmative manner, Santana-Aguirre turned, faced, looked at and opened his hands to Investigator Lutter. Invesigator Lutter found nothing on Santana-Aguirre's body and pointed to the suitcase.

Investigator Lutter requested permission to search the suitcase. Santana-Aguirre opened his hand to Investigator Lutter and pointed to the suitcase, and Investigator Lutter understood the gestures as consent to search. Investigator Lutter searched the suitcase and found two large wax candles, each approximately the size of a gallon can of coffee. The candles looked standard and inexpensive, but stood out to him because it would be easier for someone to buy identical candles at his destination rather than transport them. He then noticed that "the layering of the candle was inconsistent"—"[t]here were bumps separating the different layers of the candle." The original packaging had been removed, torn, and then re-taped. There were also holes around the candlewick.

Investigator Lutter noted the reactions of the co-defendants. Santana-Aguirre appeared "very nervous" and looked constantly at Arana-Santibanez, but never directly at Investigator Lutter. Santana-Aguirre appeared "very dependent" on Arana-Santibanez for guidance and direction. The investigators both noticed that Arana-Santibanez had become "very interested" in Investigator Lutter's contact and search of Santana-Aguirre, even though Investigator Eberle was then searching Arana-Santibanez's bag. In English, Investigator Lutter asked Arana-Santibanez about the candles, and Arana-Santibanez responded that they were gifts and cost about eight dollars. Investigator Lutter asked Arana-Santibanez for permission to cut open the candles, and Arana-Santibanez responded, "That is on [Santana-Aguirre]."

In English, Investigator Lutter stated that he wanted to take the candles to the back room. He did not know how to say it in Spanish to Santana-Aguirre, so he tried to explain it in English and used non-verbal directions. Santana-Aguirre did not say anything and looked at Arana-Santibanez for guidance. Investigator Lutter walked towards the back room, Santana-Aguirre followed, and Arana-Santibanez and Investigator Eberle brought up the rear. The backroom was approximately twenty feet away.

Once in the room, Investigator Lutter immediately cut into one of the candles with a knife. He found a duct-taped bundle inside the candle and conducted a positive field test for methamphetamine. The co-defendants were then placed in custody, cuffed, and advised that they were under arrest. The investigators collected the evidence and took it to the Nebraska State Patrol traffic office. There, they cut into the second candle and found methamphetamine.

The co-defendants were indicted on two counts of drug trafficking. After an evidentiary hearing, a magistrate judge recommended denial of Santana-Aguirre's motion to suppress the evidence gained from the search of the candles. Santana-Aguirre objected to the report and recommendation. After a de novo review of the record, the district court denied Santana-Aguirre's motion, finding that the search of the interior of the candles was within the scope of Santana-Aguirre's consent. Santana-Aguirre appeals.

## II.

In an appeal of a denied motion to suppress, "we review the district court's factual findings for clear error and its ultimate determination of whether those facts amounted to a constitutional violation de novo." United States v. Valencia, 499 F.3d 813, 815 (8th Cir. 2007). The Fourth Amendment proscribes unreasonable searches. Florida v. Jimeno, 500 U.S. 248, 250 (1991). Consensual searches are reasonable if

they do not exceed the scope of the consent given, and "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id. at 251 (quotation omitted).

Santana-Aguirre argues that his motion to suppress should have been granted because Investigator Lutter exceeded the scope of his consent to search by cutting into and destroying the candles. Neither the magistrate judge nor the district court made a finding regarding the damage inflicted to the candles. We assume for the sake of argument that the candles were destroyed.

Consensual searches generally cannot be destructive. United States v. Alverez, 235 F.3d 1086, 1088-89 (8th Cir. 2000). Cutting or destroying an object during a search requires either explicit consent for the destructive search or articulable suspicion that supports a finding that probable cause exists to do the destructive search. Id. at 1089.

The district court's finding that Santana-Aguirre consented to the searches gives us pause. Santana-Aguirre did not speak or understand English, and Investigator Lutter did not attempt to explain in Spanish that he would cut into the candles. After Investigator Lutter indicated that he wanted to take the suitcase into another room, Santana-Aguirre looked to Arana-Santibanez for guidance and then followed Investigator Lutter into the back room, where Investigator Lutter immediately cut into the candles. Santana-Aguirre did not appear to fully understand or comprehend the situation. We do not, however, reach the ultimate issue of his consent to the destructive searches because we conclude there was probable cause to support the searches.

Investigator Lutter had probable cause to do destructive searches of the candles. Probable cause is determined after considering the totality of the circumstances.

United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir. 2007).  The candles were large, plain, and inexpensive.  They were not the type of candles that a person would normally transport hundreds of miles in a suitcase.  The layering of the candles was inconsistent, and the candles had holes by the wicks and bumps separating the different layers.  The candles did not appear to be in their original packaging, the lettering on the packaging appeared to be torn, and tape secured the packaging.  Also, Arana-Santibanez became very interested in Investigator Lutter's search of the suitcase, even though Investigator Eberle was then questioning Arana-Santibanez.  Further, the investigators were already suspicious of Santana-Aguirre because he bought a one-way bus ticket for cash, appeared very nervous, repeatedly looked over his shoulder, carried his suitcase under his arm, and walked immediately behind Arana-Santibanez in the bus terminal; the investigators knew these actions were common for drug couriers.  Given the totality of the circumstances, Investigator Lutter had probable cause to believe that the candles contained contraband, and thus the destructive searches were reasonable.  See Alverez, 235 F.3d at 1089 ("[T]he cutting of the spare tire likely exceeded the scope of the consensual search and may well have required suppression of the evidence had the officers not had probable cause to expand the search" under the automobile exception.); id. ("Because the troopers had probable cause to believe that contraband was secreted in the vehicle, in particular in the spare tire, they could lawfully complete a full and thorough search of the tire, including dismantling or damaging it."); United States v. Urbina, 431 F.3d 305, 310 (8th Cir. 2005) ("The sound of objects moving in the tank gave the officers probable cause to believe that the gas tank contained contraband, and probable cause is sufficient to justify the warrantless search of an automobile or a container therein, including the destruction, if necessary, of the container."); Cf. United States v. Osage, 235 F.3d 518, 520 n.1 (10th Cir. 2000) (reversing the denial of a motion to suppress because opening a sealed can and thereby destroying it exceeded the scope of a consent to search a suitcase, but expressly noting that the government did not argue there was probable cause to seek a warrant on the sealed can).

Investigator Lutter's search of the suitcase and discovery of the candles was within the scope of Santana-Aguirre's consent to search. Once the candles were found and examined, the officer had articulable suspicion that supported a finding that he had probable cause for further destructive searches. Accordingly, the judgment of the district court is affirmed.

BEAM, Circuit Judge, dissenting.

This is a case in which the police clearly overreached in the course of their investigation. The consent obtained was to look inside the suitcase, nothing more. The court is correct in noting that

> [c]onsensual searches generally cannot be destructive. United States v. Alverez, 235 F.3d 1086, 1088-89 (8th Cir. 2000). Cutting or destroying an object during a search requires either explicit consent for the destructive search or articulable suspicion that supports a finding that probable cause exists to do the destructive search. Id. at 1089.

Ante at 5. Here, there was neither probable cause nor articulable suspicion sufficient to extend the search by cutting into the candles. The best that the court can do by way of precedent is to cite the automobile exception relied upon in cases such as Alverez and United States v. Urbina, 431 F.3d 305, 310 (8th Cir. 2005), but the policies underlying the automobile exception are wholly inapplicable here. The constitutional approach required the securing of the suitcase, which the consent to search its interior permitted, followed by an application for a search warrant. The shortcut adopted by the investigators was fatal to the government's position. The district court should be reversed. Accordingly, I dissent.

_____