# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2994
_____

United States of America

*Plaintiff - Appellee*

v.

Jorge Alberto Zamora-Garcia

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 14, 2016
Filed: August 2, 2016

_____

Before SMITH and GRUENDER, Circuit Judges, and KETCHMARK,[1] District Judge.

_____

GRUENDER, Circuit Judge.

Jorge Alberto Zamora-Garcia was charged with possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable

_____

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, sitting by designation.

amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The district court[2] denied his motion to suppress the packages of methamphetamine gathered during the search of his vehicle. Zamora-Garcia entered a conditional guilty plea, preserving the right to appeal the court's denial of his motion to suppress. He now appeals, and we affirm.

I.

On July 23, 2012, Corporal Lowry Astin of the Arkansas State Police noticed that a car driving on Interstate 40 had something dragging underneath it. Corporal Astin stopped the car and informed its driver, Zamora-Garcia, of the dragging part. According to Corporal Astin, Zamora-Garcia was extremely nervous during this interaction, and Zamora-Garcia's hands shook as he retrieved his driver's license. After speaking briefly with Corporal Astin, Zamora-Garcia stepped out of the car to examine the underbody of the vehicle while his two passengers, his sister and niece, remained inside. Corporal Astin then invited Zamora-Garcia to join him in the patrol car while he checked Zamora-Garcia's license. While the two men were sitting in the car, Corporal Astin asked Zamora-Garcia where he lived and where he was going. Zamora-Garcia responded that he was from California and that he was traveling cross-country to visit family in Atlanta.

After verifying Zamora-Garcia's license, Corporal Astin asked if the vehicle contained anything illegal. Zamora-Garcia replied, "No, sir." Corporal Astin then said, "Do you mind if I search it? Can I?" Zamora-Garcia responded, "Yeah, if you want to." Zamora-Garcia opened the trunk, and Corporal Astin conducted a roadside search.

---

[2]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

Corporal Astin noticed that the trunk's carpet had been glued to the floor. As a former automobile mechanic, he knew that car manufacturers typically do not adhere carpets to a vehicle's trunk in this manner, and he suspected that the car had been altered to contain a hidden compartment. He asked Zamora-Garcia if the car had been in a wreck, and Zamora-Garcia said no. Corporal Astin also noticed a large sum of cash, later inventoried as more than $1,600, in a bag under the luggage in the trunk. When Corporal Astin commented on the cash, Zamora-Garcia quickly said that it belonged to his sister. Corporal Astin then crawled underneath the vehicle with his flashlight and saw that a metal box had been welded to the underbody of the car, spanning the car's entire width. Corporal Astin searched for a trapdoor to gain entry into this compartment. As he was doing so, an Arkansas state trooper stopped to assist. When Corporal Astin was unable to gain entry into the compartment, he decided to move the search to police headquarters. Corporal Astin told Zamora-Garcia, "What I need you to do is follow me back to headquarters. We need to pull this wheel off and look." He explained that the wheel area did not "look right" to him. Zamora-Garcia responded, "Okay" and "That's fine." After asking which officer he should follow, Zamora-Garcia drove his car to headquarters.

Upon their arrival at headquarters, Corporal Astin and other law-enforcement officers continued to search for the compartment's trapdoor while Zamora-Garcia and his passengers waited inside the headquarters building approximately fifty feet from the car. Eventually, one of the officers drilled a hole through the trunk floor into the hidden compartment. When he removed the drill bit, it was covered with green cellophane and a white, crystal-like powder. The officers located the trapdoor in the frame of the car shortly thereafter and pried it open. Inside the compartment, they found fourteen one-pound cellophane bags of methamphetamine. Officers arrested Zamora-Garcia, and he was indicted for possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine. *See* 21 U.S.C. § 841(a)(1).

Zamora-Garcia moved to suppress the packages of methamphetamine found in his vehicle, arguing that the officers' search violated the Fourth Amendment. The district court denied his motion, and Zamora-Garcia entered a conditional guilty plea. He now appeals, renewing his argument that the search was illegal and that the evidence should have been suppressed.

## II.

Zamora-Garcia contends that the district court should have granted his motion to suppress because Corporal Astin and the other officers unlawfully searched his vehicle. "In an appeal of a denied motion to suppress, 'we review the district court's factual findings for clear error and its ultimate determination of whether those facts amounted to a constitutional violation de novo.'" *United States v. Santana-Aguirre*, 537 F.3d 929, 932 (8th Cir. 2008) (quoting *United States v. Valencia*, 499 F.3d 813, 815 (8th Cir. 2007)).

The Fourth Amendment permits the warrantless search of an automobile for contraband if an officer has obtained voluntary consent to search, as long as the search stays within the scope of the consent. *United States v. Guevara*, 731 F.3d 824, 829 (8th Cir. 2013). Significant here, Corporal Astin did not begin searching Zamora-Garcia's vehicle until after he obtained Zamora-Garcia's express consent. Corporal Astin asked Zamora-Garcia if he could search the car, and Zamora-Garcia responded "Yeah, if you want to." At no time during the subsequent search did Zamora-Garcia attempt to withdraw this consent. Indeed, after observing Corporal Astin move luggage around the trunk to search the entire interior space, Zamora-Garcia offered to take—and subsequently took—one of the large bags out of the trunk to give Corporal Astin a better view. *See United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007) (finding consent was voluntary because the defendant gave consent to search the truck to two officers and he did not complain or question officers during the search).

-4-

On appeal, Zamora-Garcia argues that the officers exceeded the scope of his initial consent when Corporal Astin instructed Zamora-Garcia to bring the car to headquarters in order to continue the search. However, we see no constitutional problem associated with this change of location. As the district court noted, Zamora-Garcia gave Corporal Astin unqualified consent to the search, and Zamora-Garcia did not object or otherwise withdraw his consent when Corporal Astin indicated that the search would continue at a second location or that the car wheel would be removed. *See United States v. Lopez-Vargas*, 457 F.3d 828, 830-31 (8th Cir. 2006) (finding no clear error in the district court's determination that a defendant's consent identifying one location permitted a subsequent search at a second location); *United States v. Martel-Martines*, 988 F.2d 855, 857 (8th Cir. 1993) (finding no Fourth Amendment violation related to a search conducted at two locations where an officer told the defendant that his truck would be taken to a second location and the defendant agreed to drive his truck to that location). Zamora-Garcia instead asked which officer he should follow and then drove his car to headquarters. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness," an inquiry that asks what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "[W]hether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). Given the circumstances here, we think the officers reasonably could have concluded that Zamora-Garcia's consent extended to the continued search at headquarters. Moreover, even if Zamora-Garcia's initial consent were somehow limited to the roadside search, we see no clear error in the district court's determination that Corporal Astin requested, rather than demanded, that Zamora-Garcia allow officers to conduct a more thorough search at headquarters. Because Zamora-Garcia responded "Okay" and "That's fine" and then asked, without prompting, which officer he should follow, we find no clear error in the court's factual determination

that Zamora-Garcia's consent to the continued search was voluntary. *See United States v. Quintero*, 648 F.3d 660, 665 (8th Cir. 2011) (noting that voluntariness of consent is a factual issue).

Our inquiry does not end with Zamora-Garcia's consent, however, because general consent to a search does not give law enforcement officers license to destroy property. *Guevara*, 731 F.3d at 830. "Cutting or destroying an object during a search requires either explicit consent for the destructive search or articulable suspicion that supports a finding that probable cause exists to do the destructive search." *Id.* (quoting *Santana-Aguirre*, 537 F.3d at 932). The Government does not contend that Zamora-Garcia explicitly consented to drilling into the car's trunk. Accordingly, our determination turns on whether the officers had probable cause to drill into the trunk to reach the hidden compartment.

"A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Id.* (quoting *Florida v. Harris*, 568 U.S. ---, 133 S. Ct. 1050, 1055 (2013)). "[T]his practical and common-sensical standard" is based on "the totality of the circumstances." *Harris*, 133 S. Ct. at 1055. "The test for probable cause is not reducible to precise definition or quantification," and "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision." *Id.* (internal alterations, citations, and quotations omitted). "All [that is] required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* (internal alterations and quotations omitted).

At the time police drilled into the trunk floor, several facts supported the reasonable belief that contraband would be present in the hidden compartment. The existence of the welded metal compartment itself suggested the car was used for some illegal activity. The Supreme Court has instructed appellate courts to give "due

-6-

weight" to a trial court's conclusion that an officer may infer the presence of contraband from the existence of such compartments. *Ornelas v. United States*, 517 U.S. 690, 700 (1996). In *Ornelas*, the Supreme Court stated:

> To a layman the sort of loose panel below the back seat armrest in the automobile involved in this case may suggest only wear and tear, but to [the officer], who had searched roughly 2,000 cars for narcotics, it suggested that drugs may be secreted inside the panel. An appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable.

*Id.* Here, Corporal Astin drew from his twenty-eight years of patrol experience and his prior work as an automobile mechanic to conclude that the compartment served no licit purpose and was instead used to transport drugs.

Our court repeatedly has cited the existence of a hidden compartment in a vehicle as a significant factor supporting probable cause to conduct a destructive search. In *Guevara*, for example, we held that the presence of a hidden compartment—when combined with inconsistent answers from the car's passengers about which relative they were going to visit, their failure to give a destination address, the car's open title, and evidence suggesting the engine compartment had been manipulated—gave the officers probable cause to destructively search the car's engine compartment for drugs. 731 F.3d at 830-31. We explained: "After finding the compartment, the troopers had more than enough information such that a reasonable person, particularly with their training and experience, would believe there was a 'fair probability' that drugs were hidden in the engine compartment." *Id.* at 831. Similarly, in *Martel-Martines*, we stated that the presence of auto-body modifications and the existence of a hidden compartment, when combined with a defendant's "evasive and inconsistent responses to routine questions," provided probable cause to support a warrantless, minimally destructive search of the vehicle's concealed compartment. 988 F.2d at 858-59. At least one circuit has gone so far as

to say that "because it is difficult to imagine a licit purpose for a large hidden compartment in a vehicle the size of a Chevy van, the[] signs of a hidden compartment strongly suggest—and *perhaps even singlehandedly establish*—probable cause to search" the van's covert cavity. *United States v. Ledesma*, 447 F.3d 1307, 1318 (10th Cir. 2006) (emphasis added).

Although we agree that the existence of the concealed compartment provided the strongest indicator of probable cause, we need not decide whether the existence of a hidden compartment was independently sufficient because additional facts also supported the reasonable belief that contraband was present in the hidden compartment. For example, Corporal Astin observed that Zamora-Garcia was extremely nervous during their initial interaction; indeed, Zamora-Garcia's hands shook as he retrieved his driver's license from his wallet.[3] *See United States v. Mayo*, 627 F.3d 709, 714 (8th Cir. 2010) (citing the defendant's nervous behavior as a factor supporting probable cause). Zamora-Garcia also stated that he was making the long, cross-country journey from California, which our court has recognized as a "drug source state." *United States v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 604 (8th Cir. 1998); *see also United States v. Kelly*, 329 F.3d 624, 628-29 (8th Cir. 2003) (finding that probable cause supported a warrantless arrest in part because the defendant was traveling from a drug-source state); *but see United States v. Beck*, 140 F.3d 1129, 1138 (8th Cir. 1998) (stating that geography is at best a weak factor supporting suspicion of criminal activity). In addition, Corporal Astin found a large

---

[3]Zamora-Garcia argues that the district court clearly erred by finding that he was nervous because Corporal Astin said at the same suppression hearing that Zamora-Garcia was relaxed as he observed the subsequent roadside search. We reject this argument. The district court chose to credit Corporal Astin's assessment of Zamora-Garcia's demeanor and his view that Zamora-Garcia was nervous initially but later relaxed. As we often note, determinations of credibility are "virtually unassailable on appeal." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quoting *United States v. Guel-Contreras*, 468 F.3d 517, 521 (8th Cir. 2006)).

sum of cash in a bag underneath the luggage in Zamora-Garcia's trunk: an amount in excess of $1,600.[4] We previously have found probable cause to search for contraband based in part on the presence of a large sum of cash in a vehicle's console. *See United States v. Patterson*, 140 F.3d 767, 773 (8th Cir. 1998). As the Sixth Circuit recognized in *United States v. Brooks*, such "large sums of cash are indicative of the drug trade." 594 F.3d 488, 495 (6th Cir. 2010) (finding probable cause in part because the defendant was carrying $1,000 in cash); *cf. United States v. Chhien*, 266 F.3d 1, 8-9 (1st Cir. 2001) (concluding that the discovery of $2,000 in cash in a defendant's pocket during a traffic stop supported reasonable suspicion and justified a brief period of further detention). Finally, Zamora-Garcia offered no legitimate explanation for the car's modifications to dispel the officer's suspicion, even after Corporal Astin said the rear wheel area did not "look right." These facts, taken together with the presence of the large metal compartment welded to the bottom of the car, supported the reasonable belief that this hidden compartment contained contraband. *See United States v. Tyler*, 238 F.3d 1036, 1038 (8th Cir. 2001) (stating that, when assessing probable cause, "we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning").

Based on the totality of circumstances, we conclude that the facts at issue would warrant a person of reasonable caution to believe that contraband was present in the concealed compartment under the car. *See Harris*, 133 S. Ct. at 1055. Probable cause therefore justified drilling into the floor of Zamora-Garcia's trunk to search for drugs. The district court properly denied Zamora-Garcia's motion to suppress.

---

[4]On appeal, Zamora-Garcia raises no challenge to Corporal Astin's search of this bag. *See Jimeno*, 500 U.S. at 251 (holding that it was objectively reasonable for the police to conclude that the general consent to search the respondent's car included consent to search a bag within that car).

## III.

For the foregoing reasons, we affirm.

_____